**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Matthew T. Anderson (025934)
mta@jaburgwilk.com
Aaron K. Haar (030814)
akh@jaburgwilk.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Advocates for Individuals with Disabilities Foundation, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Golden Rule Properties, LLC, <br><br> Defendant. | Case No. 2:16-cv-02413-GMS <br><br> **DEFENDANT'S BRIEFING RE PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE** <br><br> (Assigned to the Hon. G. Murray Snow) |

Pursuant to the Court's Order dated August 25, 2016 (Doc. 14), Defendant Golden Rule Properties, LLC ("Golden Rule"), hereby, files its briefing regarding Plaintiff's Response to Order to Show Cause. Plaintiff lacks standing to pursue the current action, and Plaintiff should be sanctioned for its bad faith litigation tactics. This briefing is supported by the following Memorandum of Points and Authorities and the attached Declaration of ADA expert Paul Farber.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiff and its counsel now admit that the complaint is defective on its face. Having filed more than a thousand practically identical lawsuits, the magnitude of this defect is astonishing; the burden imposed on private litigants and the courts is massive. Yet Plaintiff argues—without a hint of irony—that it should be allowed to amend its

complaint to cure the defect because refusing to do so would "place[ ] too high a premium on artful pleading." (Doc. 21, p. 3). If ever there were a time to place a high premium on pleading, it would be here, *prior to* unleashing an unrelenting barrage of a thousand identical lawsuits.[1]

And despite Plaintiff's claim that it can cure the defect and demonstrate standing by labeling a non-party as a "member", Plaintiff still unequivocally lacks standing. Plaintiff does not have and cannot show associational standing. Neither Plaintiff nor its purported member can tie a disability to the alleged violations in a way that demonstrates interference with enjoyment of the premises. Indeed, the alleged barrier is a mere technical violation that could not interfere with such enjoyment. Neither Plaintiff nor its purported member have personally encountered the alleged barrier sufficient to obtain standing. Plaintiff's claims of injury are seriously undermined by its status as a serial plaintiff. Ultimately, even if Plaintiff could cure the defect in its complaint, its claims are now moot as the technical violations have been remediated.

Moreover, Plaintiff's reliance on *Baddie v. Berkeley Farms, Inc.*, 64 F.3d 487, 489 (9th Cir. 1995), to assert that defendants are not entitled to recover fees and costs under 28 U.S.C. § 1447(c) is inapposite, as the relevant cases clearly allow for such recovery where, as here, the plaintiff and its attorneys act in bad faith for the purpose of imposing the removal-remand procedure. And, in any event, the Court has inherent power to award fees and costs as a sanction when it finds a party or its attorneys have acted in bad faith.

---

[1] Plaintiff's slapdash litigation tactics are the type that impose a substantial burden on the courts and opposing parties. In addition to Plaintiff's various frivolous arguments, the lackluster pleading effort is unmistakable: Beyond failing to appropriately plead standing, the Verified Complaint starts at Paragraph 47; Plaintiff alleges the retail center provides "public lodging services" (¶ 48); Plaintiff indicates it is only seeking "injunctive and declaratory relief" (¶ 50) but then pleads a demand for monetary damages (¶¶ 91, p). (Doc. 1, Verified Complaint). And, of course, Plaintiff filed its Motion to Dismiss Federal Claims on behalf of itself and a non-party. (Docs. 8; 9-1). Additionally, Plaintiff's Response to the Order to Show Cause attached a "Parking Inspection Report" concerning a property not at issue in this lawsuit. (*See* Doc. 21-1).

2

Therefore, Golden Rule respectfully requests the Court dismiss Plaintiff's claims with prejudice and grant leave to seek fees and costs against both Plaintiff and its attorneys upon compliance with LRCiv. 54.2.

## II.     ARGUMENT

### A.     Plaintiff Lacks Standing To Pursue the Alleged Claims.

#### 1.     Plaintiff cannot demonstrate associational standing.

To demonstrate associational standing, Plaintiff must show "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441 (U.S. 1977). The Supreme Court has indicated the first element of associational standing may apply even where an organization does not have "members" in a traditional sense, so long as the purported constituency "possess all of the indicia of membership in an organization." *Id*. at 344, 97 S. Ct. 2434, 2442.

The *Hunt* Court recounted relevant "indicia of membership," including whether the constituency alone elects the leadership, the constituency alone serves on the leadership body, the constituency alone finances the organization's activities (including the costs of the lawsuit at issue), and, generally speaking, the organization "[i]n a very real sense" represents and protects the collective interests of its constituency. *Id*. at 344-45, 97 S. Ct. 2434, 2442. The *Hunt* Court noted that the interests of the organization may also be indirectly implicated by the issues in the litigation (for instance, the amount of annual assessments collected), even if the organization alone might not have standing; "This financial nexus between the interests of the [organization] and its constituents coalesces with the other factors noted above to 'assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" *Id*. at 345, 97 S. Ct. 2434, 2442 (internal citation omitted).

Even where an organization does not possess all of these "indicia of membership," associational standing may still exist where constituents "possess many indicia of membership—enough to satisfy the purposes that undergird the concept of associational standing: that the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy.'" *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003).

Plaintiff fails to demonstrate—or even argue—that it is a membership organization. Plaintiff fails to demonstrate or argue that its purported "member" maintains any control sufficient to demonstrate any indicia of membership, much less *most* of the indicia of membership. The extent of Plaintiff's attempt to demonstrate associational standing is a conclusory claim that it has a member and that member personally qualifies as someone with standing under the ADA. (Doc. 21). But slapping the label "member" on a disabled non-party does not confer associational standing.

In fact, it appears Plaintiff hopes to convince the Court it has associational standing on grounds it gives gifts to people with disabilities. Paragraph 50 of the Verified Complaint identifies Plaintiff's "relationships" and "associations"—apparently in attempt to plead associational standing. (Doc. 1). Therein, Plaintiff pleads that it "is known to have past, present and future relationships or associations with individuals with disabilities" and that it has "a close relationship . . . **aris[ing] from Plaintiff's charitable acts of giving to the disabled community** . . . ." (emphasis added). Upon information and belief, Plaintiff's purported member is merely one recipient of Plaintiff's attempt to legitimize its activities by giving "charitable" gifts to individuals with disabilities. But giving gifts to a particular group does not confer associational standing on behalf of all gift recipients. Plaintiff is likely not subject to the influence of the recipients of its charity. And the recipients likely lack any control, leadership, or commonality of interest that might render them "member-like."

A recent Second Circuit decision considered whether a private, nonprofit organization that contracted with the State to provide protection and advocacy services

to certain individuals with mental illness had associational standing to assert claims on behalf of those individuals under the ADA (albeit under Title II). *Disability Advocates, Inc. v. New York Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 152 (2d Cir. 2012). The court concluded that Disability Advocates, Inc. did not have the requisite "indicia of membership" sufficient to demonstrate associational standing and could not, therefore, represent the interests of its purported members. *Id*. at 157. And, as to another party that sought to intervene in the case, the Court stated that intervention of a plaintiff with a sufficient claim will not cure the defect where jurisdiction is lacking at the commencement of the lawsuit. *Id*. at 160 (internal citations omitted).

Moreover, Plaintiff fails to demonstrate or argue that the participation of its purported member is not required. Under the ADA, a plaintiff must demonstrate how an alleged barrier affects his or her specific disability in a manner that interferes with his or her enjoyment of the property. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954 (9th Cir. 2011). This factual issue would be the primary area of inquiry in discovery. Thus, the purported member's participation in the lawsuit is necessary.

Courts have also held that a party with associational standing may only seek injunctive or declaratory relief. *Harris v. County of Orange*, 682 F.3d 1126, 1133 (9th Cir. 2012) (internal citation omitted). Yet, while Plaintiff alleged it is only seeking declaratory and injunctive relief, it also pleads a claim for recovery of monetary damages. (*See* Doc. 1, Verified Complaint ¶¶ 50, 91, p).

Therefore, Plaintiff fails to demonstrate associational standing, and its defective complaint cannot be cured.

### 2. Plaintiff fails to tie a disability to the violations in a way that demonstrates interference with enjoyment of the premises.

In *Chapman v. Pier 1 Imports (U.S.) Inc.*, the Ninth Circuit evaluated when an ADA plaintiff satisfies the "injury in fact" and "real and immediate threat of repeated injury in the future" elements of standing. 631 F.3d 939 (9th Cir. 2011) (en banc). There, the Ninth Circuit vacated the district court's grant of summary judgment in favor of the ADA plaintiff and remanded with instructions to dismiss the case for lack of

5

1 standing. *Id*. at 955 ("Because Chapman lacked standing at the outset of this litigation to assert the ADA claims, the district court should have dismissed them.").

The *Chapman* Court recited that the ADA proscribes architectural barriers that interfere with a disabled individual's "full and equal enjoyment" of the facility. *Id*. at 947. However, "a 'barrier' will only amount to such interference if it affects the plaintiff's full and equal enjoyment of the facility *on account of his particular disability*." *Id*. (emphasis added). The *Chapman* Court explained that relation to the plaintiff's particular disability is necessary to show that he has "a personal stake in the outcome of the controversy." *Id*. (citing *Doran v. 7–Eleven, Inc.*, 524 F.3d 1034, 1044 (9th Cir. 2008)). Similarly, the court held that standing "requires a sufficient showing of likely injury in the future *related to the plaintiff's disability* to ensure that injunctive relief will vindicate the rights of the particular plaintiff rather than the rights of third parties." *Id*. at 949 (emphasis added).

The Ninth Circuit went on to hold that the district court lacked subject matter jurisdiction because the plaintiff failed to allege the essential elements of standing. *Id*. at 954. The court acknowledged the generous pleading standard applicable to civil rights plaintiffs, but held that "a liberal interpretation of a … civil rights complaint may not supply essential elements of the claim that were not initially pled." *Id*. (citing *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)). The *Chapman* Court explained that

> Although Chapman alleges that he is "physically disabled," and that he "visited the Store" and "encountered architectural barriers that denied him full and equal access," **he never alleges what those barriers were and how his disability was affected by them so as to deny him the "full and equal" access that would satisfy the injury-in-fact requirement** (*i.e.,* that he personally suffered discrimination under the ADA on account of his disability).

*Id*. (emphasis added). The court stated that Chapman only provided a list of the barriers that he claimed denied him access to the store along with citation to the relevant section of the ADA Accessibility Guidelines ("ADAAG") Manual. *Id*. Chapman did not connect the alleged violations to his disability or indicate how he encountered any of

them in a manner that impaired his "full and equal enjoyment" of the facility. *Id*. This failure to relate the alleged violations to his disability was fatal to his claims: "The list of CBC and ADAAG violations cannot substitute for the factual allegations required in the complaint to satisfy Article III's requirement of an injury-in-fact." *Id*. at 954–955. The *Chapman* Court stated that it was left to guess which, if any, of the alleged violations actually interfered with his full and equal enjoyment. *Id*. at 955. The court remarked that "the list of barriers incorporated into his complaint does nothing more than 'perform a wholesale audit of the defendant's premises.'" *Id*. (citing *Martinez v. Longs Drug Stores, Inc.,* No. CIV–S–03–1843 DFL CMK, 2005 WL 2072013, at *4 (E.D. Cal. Aug. 25, 2005)). Therefore, the Ninth Circuit concluded the plaintiff lacked standing and the district court should have dismissed the case at the outset. *Id*.

Like in *Chapman*, Plaintiff has failed to relate the alleged violations to any disability and indicate how the violations so affected a disability as to interfere with full and equal enjoyment of the premises. Plaintiff, as an entity, cannot demonstrate it is disabled at all. Instead, Plaintiff asserts only that it "has a close relationship with former, current and future disabled individuals." (Doc. 1, Verified Complaint ¶ 50). The Complaint generally alleges that Plaintiff "has knowledge of at least one barrier related to third party disabled individuals . . . [and t]herefore, third party individuals with disabilities are currently deterred from visiting . . . [and] prevented from equal enjoyment . . . ." (*Id*. ¶¶ 69–70). The Complaint merely lists an alleged violation with citation to a section of the ADA design manual. (*Id*. ¶ 69). The Complaint generally asserts that "third party disabled individuals" are injured by defendant's "discriminatory practices." (*Id*. ¶ 77). But it does not say how. There are no factual allegations regarding Plaintiff's (or, for that matter, any non-party's) disability and any relevant barriers.

Utterly lacking from the Complaint is how the specific violations affected a disability and how the barriers interfered with full and equal enjoyment of the premises. The pleadings leave the Court to guess as to how any disability might be affected by the alleged barriers. Plaintiff, like Chapman, has done "nothing more than perform a

wholesale audit of the defendant's premises." Thus, the Complaint falls short of satisfying "the irreducible constitutional minimum of standing."

### 3. The alleged violation was a mere technical violation and did not possibly interfere with enjoyment of the property.

While full compliance with ADAAG standards acts as a safe harbor, defendants can rebut the presumption of non-compliance with the ADA "by demonstrating that, despite the non-conformance with the guidelines, the alleged barrier is not actually hindering equal access by the plaintiff." *See, e.g.*, *Wilson v. Pier 1 Imports (US)*, Inc., 439 F. Supp. 2d 1054, 1067 (E.D. Cal. 2006).

An ADA expert surveyed the subject property based on Plaintiff's Complaint and Parking Inspection Report. *See* Declaration of Paul S. Farber, CAI/PE ("Farber Dec.") ¶¶ 4–5, attached hereto as **Exhibit 1**. The expert determined that the property had the appropriate number of handicapped and van-accessible spaces under the most recent ADA design-standard regulations. *Id*. ¶ 6. The expert determined the van-accessible space had a handicapped accessibility sign that was the appropriate height under the regulations. *Id*. ¶ 7. The only potential issue the expert identified was that the handicapped accessibility sign did not also say "Van Accessible," as required by the design standards. *Id*. However, the expert opined that the lack of such a sign would not reasonably interfere with a patron's ability to make full use of the property. Id. ¶ 8. The expert "found no other potential ADA violations." *Id*. ¶ 9.

It defies reason that Plaintiff would file a lawsuit on the sole basis that an otherwise compliant van-accessible parking space with a handicapped accessibility sign at the appropriate height simply lacks the words "Van Accessible" on the sign. The handicapped accessibility signage over the space identifies the space as handicapped accessible. And the fact that a handicapped parking space is van-accessible would be apparent from the size/width of the parking space. If the driver of a van cannot see the space is van accessible, he or she most certainly would not derive a benefit from including the words "Van Accessible" on the sign. To argue the lack of these words is a

barrier that deters use and interferes with enjoyment of the property is inconceivable. Yet this is the "bill of goods" Plaintiff is selling.

According to the declaration, Plaintiff's purported member "regularly travel[s] by motor vehicle throughout the Valley of the Sun" and has "a child with a disability that impairs [ ] mobility." (Doc. 21-1 ¶¶ 2–3). The declaration continues: "[t]he lack of van-accessible signage is a barrier to our use and access of the Lot, as it renders it more difficult for me to identify which, if any, parking spots are van-accessible." (*Id*. ¶ 7). It concludes: "I am able to, would like to, and intend to use the Lot, but the lack of van-accessible signage is a deterrent to access." (*Id*. ¶ 8).

Moreover, the declaration (and Plaintiff's Response) indicates the property is a large strip mall with a Safeway supermarket. (Docs. 21, p. 2 & 21-1 ¶ 6). However, Plaintiff's own Parking Inspection Report for the property at issue (not the incorrect one attached to the Response) demonstrates that the property is *adjacent to* the Safeway supermarket and its parking lot but is not actually part of that parcel. *See* Parking Inspection Report p. 11 (depicting parcel at issue), attached hereto as **Exhibit 2**. The declaration utterly lacks credibility. The purported member has clearly never been to the property. The "information" she received is inaccurate—understandably, since even Plaintiff's counsel cannot keep all the lawsuits straight.

Therefore, despite this technical non-conformance, the alleged barrier does not actually hinder equal access to Plaintiff or its purported member.

### 4. Neither Plaintiff nor its purported member have personally encountered the alleged barrier.

It is necessary for a plaintiff to have personally encountered the alleged barriers to satisfy the requisite injury-in-fact element of standing. Despite Plaintiff's (and its purported member's) clear reliance on the "deterrent effect doctrine" articulated in *Pickern v. Holiday Quality Foods, Inc*., 293 F.3d 1133 (9th Cir. 2002), the Ninth Circuit does not appear to have applied this doctrine in the context of a plaintiff that did not first personally encounter the barriers. *See generally Brooke v. Peterson*, __ F.Supp.3d __, 2016 WL 2851440 (C.D. Cal. 2016) (collecting and discussing cases in the Ninth

9

Circuit). An injury cannot be "concrete and particularized" if the plaintiff has neither visited the accommodation nor encountered the alleged barrier. Nor can there be an "actual or imminent" injury in such a case. *Id*. at *6.

Plaintiff clearly relies on "obtaining knowledge" of alleged barriers rather than a percipient, personal encounter. Plaintiff alleges that it has "actual knowledge of at least one barrier related to third party disabled individuals" and "[t]herefore, third party individuals with disabilities are currently deterred from visiting Defendant's public accommodation by accessibility barrier(s)." (Doc. 1, Verified Complaint ¶ 69). Thus, the basis of Plaintiff's Verified Complaint is that somehow its "knowledge" deters *third parties* from visiting the subject property. The declaration of Plaintiff's purported member provides "I have been informed that the parking lot at [the subject property] does not have van-accessible signage, as required by the ADA." (Doc. 21-1 ¶ 5). There are no allegations that Plaintiff or any purported member ever visited the property or encountered the alleged barriers. This is presumably because Plaintiff and any purported member have neither been to the property nor encountered the alleged barriers.

Even if simply "obtaining knowledge" were sufficient to confer standing, Plaintiff's purported member likely cannot cure the defect in the Complaint. The declaration is signed under penalty of perjury on September 8, 2016. (*Id*.) The declaration does not, however, say when or how this knowledge was obtained. To the extent this knowledge was obtained after the lawsuit was filed, the purported member— and, thus, Plaintiff—could not possibly have standing to bring this lawsuit. *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2656 (U.S. 2013) ("Most standing cases consider whether a plaintiff has satisfied the requirement when filing suit, but Article III demands that an 'actual controversy' persist throughout all stages of litigation.") (citing *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (U.S. 2013)).

### 5. Plaintiff's claims of injury are undermined by its status as a serial litigant.[2]

Plaintiff and its counsel have filed more than 1,000 lawsuits in the past year—most, if not all, of which rely on receiving information from others or simply "obtaining knowledge" rather than actually visiting the premises to enjoy the services themselves. Upon information, in most of these cases, Plaintiff alleges it learned of the ADA violations on one of only a few dates, making it highly unlikely Plaintiff's purported member had any real knowledge of the violation when the lawsuits were filed.

Courts have admittedly held that serial plaintiffs *can* have standing to bring ADA claims. And, of course, a plaintiff's serial nature cannot be the sole basis for an adverse credibility determination. *See D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008). However, a plaintiff's status as a serial litigant can undermine the allegations of injury. *See, e.g.*, *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007) ("[S]erial litigation can become vexatious when, as here, a large number of nearly-identical complaints contain factual allegations that are contrived, exaggerated, and defy common sense. **False or grossly exaggerated claims of injury, especially when made with the intent to coerce settlement, are at odds with our system of justice**, and Molski's history of litigation warrants the need for a pre-filing review of his claims.") (emphasis added); s*ee also Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1374–75 (M.D. Fla. 2004) ("That he has visited the Best Western Deltona Inn in the past proves nothing. And, in view of his extensive litigation history, Mr. Brother's professed intent to return to the property is insufficient. Indeed, to satisfy Article III's standing requirements, Mr. Brother has professed an intent to return to all fifty-four of the properties he has sued. This is simply implausible.")

The fact that Plaintiff has filed more than 1,000 lawsuits, has never been to most if any of the locations, and alleges it learned of most of the violations on only a few different dates strongly suggests it does not intend to patronize these locations in the

---

[2] Plaintiff's new counsel has even argued against standing of serial ADA litigants. *See* MTD (dkt. 12), *Mosley v. Sushi Brokers*, 2:15-cv-02276-GMS (D. Ariz. Jan. 20, 2016).

1 future. The same applies to any non-party Plaintiff might try to use to gain standing in
2 its multitude of lawsuits. Any allegation to the contrary "is simply implausible." Thus,
3 there is no "imminent threat of future harm" necessary to demonstrate standing.

### 6. Plaintiff's claims are now moot.

The ADA does not authorize a private right of action to recover damages. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). Instead, a prevailing, private ADA plaintiff is entitled to injunctive relief—requiring the defendant to remove the architectural barrier and bring the facility into compliance with ADA standards—and possible recovery of attorney fees. 42 U.S.C. §§ 12188(a) & 12205.

Even if Plaintiff were able to cure the various defects, its claims are moot. The alleged technical violations have been remedied—Plaintiff installed an additional sign that includes the words "Van Accessible." *See* Farber Dec. ¶¶ 10–12. The parking lot has been re-inspected and determined to be in full compliance with the ADA. *Id.* ¶ 12.

Since the only remedy Plaintiff could possibly obtain has already been provided, Plaintiff (on behalf of itself or any purported member) has no further grounds to continue pursuing the lawsuit. The mootness doctrine applies under these circumstances considering Golden Rule's placement of van-accessible signs has made it (1) "absolutely clear that the allegedly wrongful behavior [cannot] reasonably be expected to recur," *U.S. v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968), and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Lindquist v. Idaho State Bd. of Corrections*, 776 F.2d 851, 854 (9th Cir. 1985) (citation omitted). Absent removal of the van-accessible sign by vandalism, there is no possibility Plaintiff or any purported member will be deprived of access or enjoyment. *See* Farber Dec. ¶ 13.

Therefore, whether Plaintiff can somehow generate facts sufficient to demonstrate standing is inconsequential and any amendment would be futile.

### B. An Award of Fees Is Just and Appropriate Based on Plaintiff's and Its Attorneys' Bad Faith Litigation Conduct.

The parties to a lawsuit have an affirmative duty to work together to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In light of that obligation, and based on experience with Plaintiff and its attorneys in prior cases, counsel for Golden Rule reached out to opposing counsel to determine Plaintiff's intent concerning its federal claim in attempt to avoid the unnecessary expense and delay of the removal-remand procedure. (*See* Doc. 12). Plaintiff's counsel advised, in no uncertain terms, that Plaintiff was moving forward with both federal and state claims, notwithstanding any efforts to remove. (*Id*.) Golden Rule then removed the action, and Plaintiff immediately moved to dismiss its federal claim. (*Id*.) The only intervening occurrence in the time between Plaintiff counsel's representation and efforts to dismiss the federal claim was the imposition of fees and costs on Golden Rule. Plaintiff's counsel deliberately conveyed inaccurate information—with no purpose other than to drive up costs. Plaintiff argues it was entitled to dismiss its federal claim for strategic reasons, and it was only exercising its right to do so. However, when those "strategic reasons" are solely for the purpose of imposing unnecessary costs and fees on its opponent, such abusive action is directly contrary to our system of justice.

Plaintiff cites to *Baddie v. Berkeley Farms, Inc*. to argue that fees are not awardable to defendants. (Doc. 16, p. 5). The issue in *Baddie* was simply whether it is improper to dismiss a federal claim upon removal for the purpose of returning to state court—and whether fees are properly awarded in that instance. 64 F.3d 487, 489 (9th Cir. 1995). And *Baddie* does indeed provide that, generally, a plaintiff's strategic dismissal of a federal claim to return to state court, alone, is not an improper action. *Id*. at 491. But the case does not help Plaintiff in these circumstances.

In *Baddie*, the district court ruled the defendant was entitled to fees and costs because the plaintiff improperly pled a federal claim, which the plaintiff dismissed upon removal. *Id*. The Ninth Circuit disagreed, recounting that plaintiffs have a right to plead

13

their federal claims in state court and that defendant can agree or seek to remove the case—at which point the plaintiff can agree to litigate in federal court or dismiss and return to state court. *Id*. The court explained there was nothing inherently improper about such an interaction. *Id*. The court indicated that, in that instance, where removal and remand are proper, the expenses later imposed by dismissal of the federal claim were not "incurred as a result of the removal." *Id*. at 490. Thus, the court concluded, an award of fees and costs were not justified in that instance. *Id*.

However, *Baddie* still recognizes that when a plaintiff inappropriately induces a defendant to remove the case for the purpose of imposing the expense and delay of removal and remand, fees and costs under 1447(c) may be properly awarded. *Id*. The court explained that if the state court later finds that the federal claims were included in bad faith or for the purpose of putting defendants through the removal-remand procedure, the court *should* sanction the plaintiffs. *Id*. at 490 n.3.[3] But, under the facts of *Baddie*, the district court had found no bad faith action other than plaintiff's dismissal of the federal claim upon removal. *Id*. There was no prior communication or misrepresentation between the parties, as occurred here. Indeed, the court expressly stated that the court leaves for another day the question of whether a plaintiff misleading the defendant as to removal might be required to bear the costs of removal. *Id*. at 490 n.1. Ultimately, the court held the award of fees was not justified because the district court had not found that plaintiff's actions were frivolous or in bad faith. *Id*. at 491.

Based on *Baddie*, courts in the Ninth Circuit have found that strategically dismissing federal claims is not inherently manipulative unless there is reason to believe the plaintiff acted for the purpose of putting the defendants through the removal-remand procedure. *In re Mortgage Elec. Registration Sys. (MERS) Litig.*, CV 10-217-PHX-JAT,

---

[3] Plaintiff and its counsel suggest the *Baddie* Court held the state court was the proper forum to determine if sanctions are appropriate. (Doc. 21, p. 8). However, it appears the *Baddie* decision only remarks that "the state court should sanction plaintiffs on remand" because the case had already progressed back to state court, and the district court had failed to inquire as to bad faith. The comment in the footnote seems more of a practical consideration based on the underlying posture of that particular case.

2010 WL 3239481, at *3–4 (D. Ariz. Aug. 16, 2010) (citing *Popov v. Countrywide Financial Corp.,* No. CIV 09–2780 GEB EFB PS, 2009 WL 5206679, at *3 (E.D. Cal. Dec. 18, 2009)); *Garcia v. Orion Plastics Corp.*, __ F. Supp. 3d __, 2016 WL 2904853, at *4 n.2 (C.D. Cal. May 18, 2016) ("[A] plaintiff's decision to dismiss his federal claim and seek remand 'need not be discouraged unless there is reason to believe that the inclusion of the federal claims was to put the defendants through the removal-remand procedure.'") (quoting *Moyles v. Johnson Controls, Inc*., No. CIV. S05885, 2005 WL 1561519, at *2-4 (E.D. Cal. June 29, 2005)).

The U.S. Supreme Court has since held that, despite the general rule that fee awards under § 1447(c) are typically not granted if initial removal was proper, certain circumstances may warrant a departure from this general rule. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140, 126 S. Ct. 704, 711 (2005). The Court indicated "[t]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Id.* at 141, 126 S. Ct. 704, 711. The Court held that district courts have discretion in determining whether the circumstances justify an award of fees. *Id*.

This is precisely the type of case where an award of fees and costs to defendant would be appropriate. Plaintiff did not simply plead a federal claim, as was the case in *Baddie*. Plaintiff's counsel deliberately conveyed inaccurate information, again, with no purpose other than to drive up costs. Plaintiff's and its attorneys' *pre*-removal misrepresentation induced Golden Rule to incur the costs of removal for naught. Plaintiff and its attorneys have widely employed such tactics to maximize its opponents' expenses, making it more expensive to resist than to succumb to Plaintiff's extortionate and unjustified settlement demands.[4] Notably, despite filing several motions and being

---

[4] In fact, the Arizona Attorney General, on behalf of the State of Arizona, recently filed a motion to intervene and consolidate all Plaintiff's pending lawsuits in Superior Court on grounds of protecting the public interest. *See* State's Motion, attached hereto as **Exhibit 3**. According to the motion, the State intends to, *inter alia*, challenge Plaintiff's standing and seek sanctions for Plaintiff's abusive practices, including for unnecessarily imposing the removal-remand procedure. Moreover, Plaintiff's exact same tactics in

1. made to show cause why it should not be sanctioned, Plaintiff and its attorneys have yet
2. to dispute the assertions that its actions were taken in bad faith—only that Plaintiff has a
3. right dismiss its federal claim to return to state court.

Plaintiff's bad faith tactics have produced an unjust result, and an award of fees and costs would be appropriate under the circumstances. And, notwithstanding any limitation of § 1447(c), the Court has inherent authority to sanction Plaintiff upon a finding of bad faith conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *Primus Automotive Fin. Svcs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). Therefore, an award of fees and costs is just and appropriate under the circumstances.

### III. CONCLUSION

Due to the foregoing, Defendant Golden Rule Properties, LLC, respectfully requests that the Court dismiss Plaintiff's claims with prejudice and grant Golden Rule leave to file an application for fees and costs against both Plaintiff and its attorneys under the Local Rules.

DATED this 15th day of September, 2016.

**Jaburg & Wilk, P.C.**

/s/ Aaron K. Haar
Matthew T. Anderson
Aaron K. Haar
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
Attorneys for Defendant

---

another lawsuit were recently found to be in bad faith, and Plaintiff was ordered to pay fees and costs incurred on removal. *See* Order (dkt. 21), *Advocates for Individuals with Disabilities Foundation, Inc. v. Sun West Dental Props., LLC*, No. 2:16-cv-02416-JJT (D. Ariz. Sep. 15, 2016)

16

***Certificate of Service***

I hereby certify that on this 15th day of September, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Strojnik, Esq.
STROJNIK P.C.
1 East Washington Street, Suite 500
Phoenix, Arizona 85004
ps@strojnik.com

Fabian Zazueta, Esq.
Advocates for Individuals with Disabilities
40 North Central Ave, Suite 1400
Phoenix, AZ 85004
Telephone: (774) 768-2233
fabian@aid.org

Attorneys for Plaintiff


/s/ Aaron K. Haar