

# STROJNIK, P.C.
### A T T O R N E Y   A T   L A W

**RULE 408 PROTECTED**
**SETTLEMENT COMMUNICATION**

July 5, 2016

Matthew Anderson
Jaburg Wilk - Attorneys at Law
By e-mail only *mta@jaburgwilk.com*

    Re:    *Advocates for Individuals with Disabilities Foundation v.*
            *Golden Rule Properties LLC – CV2016-006898*
            *Golden Rule Properties LLC – CV2016-006755*

Dear Matthew:

In an effort to streamline this matter, we prefer to perform all communication via email and hope you accept my response in such format.

Plaintiffs are champions for the rights of the disabled and benefit individuals with disabilities, please review information about the mission at www.Aid.org. Plaintiff is actively committed to bringing serial litigation with the goal of advancing the time when public accommodations will be compliant with the ADA. As the 9th Circuit Court of Appeals plainly stated in *Molski v. Evergreen Dynasty Corp.,* 500 F.3d 1047, 1061-62 (9th Cir.2007) (per curiam):

> **For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA**. (Emphasis supplied.)

District Courts have recognized the hostility of small businesses towards civil rights' plaintiffs and their attorneys, particularly in the ADA litigation. *See, e.g., Hernandez v. El Grullense*, 12-cv-03257-WHO (N.D. Cal., 2014); however, we fully subscribe to Frederick Douglass who famously said, "If there is no struggle, there is no progress."

The enforcement of the ADA by private attorneys general is central to ADA's sustainability. Since the ADA provides for strict liability for denial of access— motive and intent are irrelevant—it is often wise for defendants to promptly investigate the premises and if they are not in compliance, admit liability and agree to fix the problems, forestalling

the need for plaintiffs to incur additional attorneys' fees to achieve ADA compliance, therefore reducing potential liability to your client. *Hernandez.*

While the 9th Circuit has encouraged civil rights plaintiffs to file serial lawsuits in order to advance the time when public accommodations will "yield its promise of equal access for the disabled", *Molski* 500 F.3d at 1062, some offending business have countered this legitimate and socially important exercise through numerous licit and illicit means. We do not, of course, suggest any such action on the part of your client; we merely provide anecdotal evidence of extreme, but foolish, hostility on the part of commercial enterprises.

Thus far, plaintiffs I have represented, have single-handedly, but amicably, brought actions to further ADA compliance at 100's of commercial establishments in both State and Federal Court. We have been able to achieve this tremendous feat through cooperative efforts with defendants who recognize that Congress has spoken on the matter. Compliance is mandatory. It is often technical. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945-46 (9th Cir., 2011) ("[T]he standard of full and equal enjoyment established by the ADA is often a matter of inches".) However, even in cases where compliance has been achieved through voluntary removal of barriers, a miniscule but litigious minority of defendants continue their attempts to chill our clients' efforts.

Some defendants erroneously theorize that even where an ADA violation is clearly established and documented, swift voluntary compliance would moot the injunctive relief. If such were true, then competent counsel would *never* take representation of a case and a defendant would be free to violate disabled American's rights unabated.

Such defendants are often surprised by the standards of voluntary cessation and mootness. In *Friends of the Earth Inc. v Laidlaw Environmental Serv.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (U.S., 2000), the Supreme Court set the standard for voluntary cessation and burden of proof:

> A defendant's voluntary cessation of a challenged practice ordinarily does not deprive a … court of its power to determine the legality of the practice. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289. If it did, courts would be compelled to leave the defendant free to return to its old ways. Thus, the standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness. Ibid.

***

The appellate court erred in concluding that a citizen suitor's claim for civil penalties must be dismissed as moot when the defendant, albeit after commencement of the litigation, has come into compliance. In directing dismissal of the suit on grounds of mootness, the Court of Appeals incorrectly conflated our case law on initial standing to bring suit, see, e.g., *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998), with our case law on post-commencement mootness, see, e.g., *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982). A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case. The Court of Appeals also misperceived the remedial potential of civil penalties. Such penalties may serve, as an alternative to an injunction, to deter future violations and thereby redress the injuries that prompted a citizen suitor to commence litigation.

Here, Plaintiff and Plaintiff's agents have invested considerable time, money and effort in investigating, documenting and assuring that only those places of public accommodation that violate the ADA are subject to litigation. With this in mind it would be foolhardy to simply dismiss the case upon request by a defendant even if a defendant assures or promises corrective action and future ADA compliance. In fact, your client has been served with discovery requests which obligate him to affirmatively disclose *all* ADA violations so that the Plaintiff may thereafter amend the Complaint and list *all* other deficiencies which are *required to be admitted* to by your client. Additionally, once these disclosures have been made, Plaintiff will exercise the procedural right to review the entire premises for additional violations pursuant to Rule 34. *See Doran v. 7-Eleven*, 524 F.3d 1034 9th Cir. 2008) (plaintiff need only allege one instance of ADA violation to achieve standing, but is permitted to then challenge other ADA violations found in the course of discovery).

Respectfully, your client has no defenses to this lawsuit, and if your client decides to fight this litigation, it will surely incur significant risk in a clear case. First, we have documented that your client was factually and legally in violation of Title III and the 2010 Standards of Accessible Design at the time of the lawsuit; whether or not your client has belatedly complied with the ADA will be determined through the disclosure and discovery process. Second, any such late compliance is not grounds for dismissal. Third, my client is entitled to fees whereas your client will not be. In a civil rights case such as this, when the Plaintiff prevails in an ADA suit,"[t]he court should award attorneys' fees and costs to a prevailing plaintiff under the ADA, 42 U.S.C. § 12205, unless special circumstances render the award unjust." *Hohlbein v. Utah Land Resources LLC*, 2012 WL 313613, * 1 (9th Cir. 2012) On the other hand, the Ninth Circuit has interpreted the statute to mean that attorneys' fees may *only* be awarded to a prevailing defendant in an ADA case where the plaintiff's claims are frivolous, unreasonable, or without foundation. *Hubbard v. SoBreck, LLC*, 554 F.3d, 744 (9th Cir. 2008) (citing *Summers v. Teichert & Son, Inc.,* 127 F.3d 1150, 1154 (9th Cir. 1997). The *Hohlbein* factors prevail while the *Hubbard* factors do not apply here.

On the third point, it is important to note the Court's feelings about decisions to litigate clear ADA violations. In an ADA matter very similar to this case, *Hernandez v. El Grullense* (N.D. Cal. 2014), the defendants decided to litigate. In assessing over $60,000.00 in lawyer's fees, the Court noted "***the defendants chose to contest liability instead of promptly conceding that their premises violated the ADA...I will not protect defendants from the consequences of their litigation decisions.***" (Emphasis supplied). Additionally, you should be aware that any ADA violations discovered pursuant to a Rule 34 inspection can and will be added to the complaint pursuant to current Ninth Circuit law.

Economically, then, it is in everyone's interest to reach a fair and amicable resolution. On the one hand, our client will achieve the goal of ensuring your client's compliance with the ADA and on the other, your client will prudently limit its exposure to significant additional costs and fees.

If your client is willing to, in a timely manner, agree to remedy the violations alleged in the Complaint and to inspect and address *all* other potential ADA violations on its premises by September 5, 2016, whether these violations have been alleged or whether they would be alleged by amendment, my client would be willing to settle this matter in exchange for damages, costs, expenses and attorney's fees in the amount of $7,500.00 for each case and a filing of a voluntary dismissal with prejudice. This offer remains open until your next Court filing.

Please forward a copy of this letter to your client and advise whether this resolution makes sense.

Sincerely,

Peter Strojnik, Esq.

# Audit

| Question | Response | Details |
|---|---|---|
| Is This Location Compliant? | No | |
| | | |
| V1 Are accessible spaces identified with a sign that includes the International Symbol of Accessibility? | Yes | |

| Question | Response | Details |
|---|---|---|
| V1B Is the bottom of the sign at least 60 inches above the ground? | Yes | |



| | | |
|---|---|---|
| V2 Are there signs reading "Van Accessible" at van accessible spaces? | No | |
| Additional Notes: (Optional) | | |

| Question | Response | Details |
|----------|----------|---------|
| Additional Pictures: (Optional)<br><br> <br>Appendix 1        Appendix 2 | | |

## Media



Appendix 1



Appendix 2

Kati- Template









# 140-10-442

Parcel Type: Commercial

[GOLDEN RULE PROPERTIES LLC](#)    [454 N LINDSAY RD MESA 85213](#)

## Property Information

| | |
|---|---|
| MCR #: | 43209 |
| Address: | 454 N LINDSAY RD MESA 85213 |
| Latitude/Longitude: | 33.42420006 | -111.77106363 |
| Description: | NORTH MESA PLAZA SECOND AMENDED MCR 432-09 |
| Lot Size (Sq Ft): | 27,862 |
| Zoning: | LC |
| Section, Township, Range: | 18 1N 6E |
| Associated Parcel(s): | 140-10-441,140-10-358,140-10-359D,140-10-440,140-10-442 |
| Market Area/Neighborhood: | 03/019 |
| Subdivision: | NORTH MESA PLAZA SECOND AMENDED |
| Lot #: | 3 |
| High School District: | MESA UNIFIED #4 |
| Elementary School District: | MESA UNIFIED SCHOOL DISTRICT |
| Local Jurisdiction: | MESA |
| Owner: | GOLDEN RULE PROPERTIES LLC |
| Mailing Address: | 11755 WILSHIRE BLVD NO 50 , LOS ANGELES, CA 90025 |
| Deed #: | 110195896 |
| Deed Date: | March 07, 2011 |
| Sale Date: | None |
| Sale Price: | $0 |

## Valuation Data

| Tax Year: | 2017 | 2016 | 2015 | 2014 | 2013 |
|---|---|---|---|---|---|
| Full Cash Value: | $506,400 | $498,700 | $405,400 | $400,500 | $441,138 |
| Limited Property Value: | $446,954 | $425,670 | $405,400 | $400,500 | $441,138 |
| Legal Class: | 1 | 1 | 1 | 1 | 1 |
| Description: | SHOPPING CENTERS | SHOPPING CENTERS | SHOPPING CENTERS | SHOPPING CENTERS | SHOPPING CENTERS |
| Assessment Ratio: | 18% | 18% | 18.5% | 19% | 19.5% |
| Assessed FCV: | $0 | $0 | $0 | $76,095 | $86,022 |
| Assessed LPV: | $80,452 | $76,621 | $74,999 | $76,095 | $86,022 |
| Property Use Code: | 1410 | 1410 | 1410 | 1410 | 1410 |
| PU Description: | Shopping Center | Shopping Center | Shopping Center | Shopping Center | Shopping Center |
| Tax Area Code: | 041000 | 041000 | 041000 | 041000 | 041000 |

# Commercial Characteristics/Improvements

| Description | Number | Model | Quality Rank | Age | Sq Footage |
|---|---|---|---|---|---|
| Neighborhood Shopping Center | 412 | 2 | 31 | 9,595 |
| Commercial Yard Improvements | 353 | 2 | 29 | 1 |

Notice: The values displayed on this page may not reflect constitutional or statutory adjustments.

# Property Sketches

**CAUTION! USERS SHOULD INDEPENDENTLY RESEARCH AND VERIFY INFORMATION ON THIS WEBSITE BEFORE RELYING ON IT.**

The Assessor's Office has compiled information on this website that it uses to identify, classify, and value real and personal property. Please contact the Maricopa County S.T.A.R. Center at (602) 506-3406 if you believe any information is incomplete, out of date, or incorrect so that appropriate corrections can be addressed. Please note that a statutory process is also available to correct errors pursuant to Arizona Revised Statutes 42-16254.

The Assessor does not guarantee that any information provided on this website is accurate, complete, or current. In many instances, the Assessor has gathered information from independent sources and made it available on this site, and the original information may have contained errors and omissions. Errors and omissions may also have occurred in the process of gathering, interpreting, and reporting the information. Information on the website is not updated in "real time". In addition, users are cautioned that the process used on this site to illustrate the boundaries of the adjacent parcels is not always consistent with the recorded documents for such parcels. The parcel boundaries depicted on this site are for illustrative purposes only, and the exact relationship of adjacent parcels should be independently researched and verified. The information provided on this site is not the equivalent of a title report or a real estate survey. Users should independently research, investigate and verify all information before relying on it or in the preparation of legal documents.

**By using this website, you acknowledge having read the above and waive any right you may have to claim against Maricopa County, its officers, employees, and contractors arising out of my reliance on or the use of the information provided on this website.**

Search Date and Time:
**3/23/2016 12:31:06 AM**

File Number:
**L15896258**

Corporation Name:
**GOLDEN RULE PROPERTIES LLC**

Collapse | Expand

### Corporate Inquiry ▲

| | |
|---|---|
| **File Number** | L15896258 |
| **Corporation Name** | GOLDEN RULE PROPERTIES LLC |
| **Standing** | Check Corporate Status |

### Domestic Address ▲

% PAGE CRS
443 E PAGE AVE
GILBERT, AZ 85234

### Statutory Agent Information ▲

**Agent Name:** GREG PAGE

**Agent Mailing/Physical Address:**

443 E PAGE AVE
GILBERT, AZ 85234

**Agent Status:** APPOINTED 03/12/2010

Arizona Corporation Commission e-Corp

**Agent Last Updated:** 07/01/2011

## Additional Entity Information 

| | |
|---|---|
| **Entity Type:** DOMESTIC L.L.C. | **Business Type:** |
| **Incorporation Date:** 3/12/2010 | **Corporation Life Period:** PERPETUAL |
| **Domicile:** ARIZONA | **County:** MARICOPA |
| **Approval Date:** 3/18/2010 | **Original Publish Date:** 4/19/2010 |

## Manager/Member Information 

| | |
|---|---|
| **Name** | NARAYAN WADHWANI |
| **Title** | MANAGER |
| **Address** | 3147 DEEP CANYON DR<br>BEVEERLY HILLS, CA 90210 |
| **Date of Taking Office** | 03/12/2010 |
| **Last Updated** | 03/18/2010 |

## Scanned Documents 

Click on a gold button below to view a document. If the button is gray, the document is not yet available. Please check back again later.

| | |
|---|---|
| **Document Number** | 03517791 |
| **Description** | CHANGE(S) |
| **Date Received** | 5/19/2011 |

| Document Number | 03150214 |
| --- | --- |
| Description | PUB OF ARTICLES OF ORGANIZATION |
| Date Received | 5/6/2010 |
| Document Number | 03132225 |
| Description | PUB OF ARTICLES OF ORGANIZATION |
| Date Received | 4/19/2010 |
| Document Number | 03062624 |
| Description | ARTICLES OF ORGANIZATION |
| Date Received | 3/12/2010 |

Microfilm 

| Location | Entered | Description |
| --- | --- | --- |
| 32216029005 | 3/12/2010 | ARTICLES OF ORGANIZATION |
| 32221093045 | 4/19/2010 | PUB OF ARTICLES OF ORGANIZATION |
| 32222117033 | 5/6/2010 | PUB OF ARTICLES OF ORGANIZATION |
| 32265120027 | 5/19/2011 | CHANGE(S) |

Print Details

Privacy Policy (http://www.azcc.gov/Divisions/Administration/Privacy.asp) l Contact Us (http://www.azcc.gov/divisions/corporations/contact-us.asp)