MARK BRNOVICH
ATTORNEY GENERAL
(Firm Bar No. 14000)
PAUL N. WATKINS (Bar No. 32577)
MATTHEW DU MEE (Bar No. 28468)
BRUNN W. ROYSDEN III (Bar No. 28698)
ORAMEL H. SKINNER (Bar No. 32891)
JOHN HEYHOE-GRIFFITHS (Bar. No. 31807)
EVAN G. DANIELS (Bar No. 30624)
ASSISTANT ATTORNEYS GENERAL
1275 West Washington Street
Phoenix, Arizona 85007
Telephone: (602) 542-7757
Facsimile: (602) 542-4377
Paul.Watkins@azag.gov
Beau.Roysden@azag.gov
O.H.Skinner@azag.gov
Matthew.duMee@azag.gov
John.Griffiths@azag.gov
Evan.Daniels@azag.gov

*Attorneys for State of Arizona*

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| ADVOCATES FOR AMERICAN DISABLED INDIVIDUALS, LLC, and David Ritzenthaler, dealing with Plaintiff's sole and separate claim,<br><br>Plaintiff,<br><br>vs.<br><br>1639 40TH STREET LLC,<br><br>Defendant. | Case No: CV2016-090506<br><br>**STATE OF ARIZONA'S MOTION TO INTERVENE AS A LIMITED PURPOSE DEFENDANT**<br><br>**AND**<br><br>**REQUEST FOR EXPEDITED CONSIDERATION**<br><br>(Assigned to the Hon. David M. Talamante) |

Pursuant to Arizona Rule of Civil Procedure 24, and for the reasons set forth herein, the State of Arizona *ex rel.* Mark Brnovich, the Attorney General ("the State") hereby moves to intervene as a limited purpose defendant.[1] This case is one of thousands of public accommodation of disabilities cases that Plaintiff has filed in this Court since February, each of which is based on a statute for which the Arizona Legislature has given the State primary administrative responsibility. Plaintiff's systemic abuse of the judicial system through these thousands of serial claims imperils the public interest by threatening the separation of powers established by the Arizona Constitution as well as the effective enforcement regime established by the public through the Legislature. The State therefore seeks to intervene in this matter as of right under Rule 24(a), or in the alternative under permissive intervention under Rule 24(b), in order to protect the public interest, preserve the separation of powers, and otherwise advocate for its interests as the primary administrator of the Arizonans with Disabilities Act ("the AZDA"), Arizona Revised Statutes ("A.R.S.") §§ 41-1492, *et seq.* Pursuant to Ariz. R. Civ. P. 24(c), this Motion is accompanied by a proposed Answer setting forth the affirmative defenses of lack of standing and failure to state a claim. EXHIBIT A, Proposed Answer.

## I. BACKGROUND

Plaintiff Advocates for Individuals with Disabilities, LLC is flooding this Court with lawsuits, apparently as part of a concerted effort to improperly use the judicial system for its own enrichment. Plaintiff claims to have filed over 2,000 cases and, on information and belief, intends to file thousands more cases in the near future. This action, like the rest of Plaintiff's

---

[1] The State moves to intervene as a nominal defendant for the limited purpose of requesting that the well over one thousand other actions filed by the Plaintiff be consolidated into this action and dismissed on the basis of lack of subject matter jurisdiction, failure to state a claim, and Rule 11 failings common (and fatal) to those actions. The State expects to file promptly its motion to consolidate (or ask the Court to consolidate these cases *sua sponte*) and its standing-related filings upon the Court granting this motion to intervene. The State takes no position at this time as to whether an ADA or AZDA violation exists in any particular case.

serial filings, is premised on purported violations of the AZDA in the Defendant's parking lot, and demands thousands of dollars in damages, costs, and attorneys' fees. *See, e.g.*, Complaint ("Compl.") at ¶ 4 and p. 7-8. But the Complaint, like the rest of Plaintiff's virtually identical filings in other cases, fails threshold jurisdictional tests required of all civil litigation, and those filings, viewed as a whole, also appear to violate Rule 11.

When businesses are served with one of these serial complaints, they face a difficult choice. Unlike an individual, a business cannot represent itself in Superior Court. But hiring counsel to defend the claim will cost thousands, or potentially tens of thousands, of dollars. And when businesses attempt to settle, Plaintiff has publicly admitted that it "always" issues a standard opening settlement offer demanding $7,500. *See* AID Foundation, *AID Exposes ABC 15 Hateful Lies*, (published Aug. 19, 2016) ("AID Foundation Video"), https://www.youtube.com/watch?v=PZOE_h10N4A (at 2:55). This is grossly disproportionate to the alleged violations, with $7,500 being, in fact, an even greater amount than the State can obtain as a civil penalty for an offender's first violation after completing the investigation and conciliation process. *See* A.R.S. § 41-1492.09(C) (establishing a $5,000 penalty for a first offense). But for businesses, settling is still often cheaper than litigating, and Plaintiff boasts that they obtain an average settlement of $3,900. *See* AID Foundation Video (at 4:42).

Businesses that choose to fight back face a different problem, as demonstrated by Plaintiff's behavior in this and related cases. When businesses moved to relate their cases to make their defense economically rational, Plaintiff attempted to dismiss this case with prejudice after an answer was filed, an action not allowed by Ariz. R. Civ. P. 41(a) and 7.1. Plaintiff then claimed that the cases could not be related because "the case under which the Defendant moves for the Court to deem cases related and transferred"—this case—"has now been dismissed with prejudice, as of today." EXHIBIT B, Plaintiff's Opposition to Defendant's Motion to Deem Cases Related and Request Transfer, filed in CV2016-092105, p. 1 and 3. And when Plaintiff is removed to federal court, Plaintiff often drops its federal claims and requests a remand. *See*,

*e.g., Advocates for American Disabled Individuals, L.L.C. v. Yee*, No. CV2016-090488 (remand from Federal court on July 25, 2016 based on Plaintiff's Notice of Voluntary Dismissal of Federal Claims Without Prejudice and Motion to Remand).

Many of the businesses that have not settled or fought back are at risk of default, and Plaintiff recently filed what may be the first of many applications for default judgments. *See* EXHIBIT C, Notice and Application for Entry of Default, filed in CV2016-090554.

The Complaint in this case, as in many other cases, purports to be verified via the electronic signature of David Ritzenthaler. According to the Corporation Commission's website, Ritzenthaler is the Chairman and Director of Advocates for Individuals with Disabilities Foundation, Inc. http://ecorp.azcc.gov/Details/Corp?corpId=F21042916. The Advocates for Individuals with Disabilities Foundation, in turn, is the sole member of the Plaintiff LLC. http://ecorp.azcc.gov/Details/Corp?corpId=L20576609. News reports suggest that Ritzenthaler has not reviewed all of the complaints that were filed listing his "Electronic Signature Authorized" as the verifier of the complaint. Dave Biscobing & Shawn Martin, *Cash for Compliance? 'Advocacy' groups answers don't add up about serial ADA lawsuits*, ABC15.com, http://www.abc15.com/news/local-news/investigations/cash-for-compliance-advocacy-groups-answers-dont-add-up-about-serial-ada-lawsuits ("A reporter asked him the following question: 'Do you know how many lawsuits you've been involved with - how many your name's been put on?' Ritzenthaler answered, 'I believe about 160.' It wasn't 160. It was 530 – all of them filed in a three-month period from mid-February to mid-May. In fact, Ritzenthaler signed and attested to every one of the lawsuits under the penalty of perjury, court records show."). News reports also indicate that the suits were filed without Ritzenthaler having actually experienced or witnessed in person any of the alleged violations. *Id.* ("Ritzenthaler and his attorneys said he has not visited most of the businesses he's sued.").

Beyond these issues, Plaintiff's actions rely on public accommodation and services requirements established by the AZDA that the State is broadly tasked with investigating and, as

necessary, enforcing. *See* A.R.S. § 41-1492.09(A). Under the AZDA, the State must not only conduct investigations of filed allegations and pursue enforcement actions (where necessary), but also perform "periodic reviews of compliance of covered entities." *Id.* Moreover, A.R.S. § 41-1492.06(A) requires the State to adopt rules, which exist as part of the Arizona Administrative Code, "to carry out the intent" of the public accommodation and services requirements. *See* A.A.C. R10-3-401 through -412. As relevant to enforcement, the rules establish: the complaint process, A.A.C. R10-3-405 through -409; the State's investigative process, A.A.C. R10-3-410; and the conciliation process, A.A.C. R10-3-412.

The AZDA requires the State to investigate all alleged public accommodations or services complaints properly filed with the Attorney General. A.R.S. § 41-1492.09(A). It then provides for three possible outcomes. First, the State must dismiss the complaint and give notice to the complainant and the entity complained against if "no reasonable cause exists to believe that a violation of this article has occurred or is about to occur." *Id.* Second, the State may seek temporary or preliminary relief if, at any time, it concludes "that prompt judicial action is necessary to carry out the purposes of this article." *Id.* Finally, if the State determines reasonable cause exists for a violation, the State must attempt, for up to thirty days, to "effectuate a conciliation agreement." *Id.* If conciliation fails, the State must initiate a civil action. *Id.* Similarly, if the State finds reasonable cause to believe a party has breached a conciliation agreement, the State must file a civil action to enforce the agreement. *Id.*

In addition to State action, a private party may institute a civil action "for preventative or mandatory relief, including an application for a permanent or temporary injunction, restraining order or other order." A.R.S. § 41-1492.08(A). Under A.R.S. § 41-1492.09(B), the court adjudicating "any civil action under this article" may grant equitable relief and likewise has discretion to award "monetary damages to aggrieved persons." However, civil penalties may be obtained only by the State. A.R.S. § 41-1492.09(C). For a first violation, a civil penalty may not exceed $5,000, but any subsequent violation may result in a penalty of as much as $10,000.

*Id.* Likewise, courts may award attorneys' fees "in any action or proceeding under this section," meaning that fees only may be awarded in enforcement actions brought by the State. *See* A.R.S. § 41-1492.09(F). Fees can only be awarded to the prevailing party in such actions, and the Attorney General cannot be awarded fees, even if it prevails. *Id.*

Conciliation provides an alternative means of resolving public accommodation and services legal claims. Indeed, as previously noted, the Legislature *requires* the State to engage in conciliation, with a limited exception, before instituting a civil action. A.R.S. § 41-1492.09(A). Under the State's rules, the purpose of conciliation is to "attempt to achieve a just resolution of the [public accommodation or services] complaint and to obtain assurances that the respondent will satisfactorily remedy any violation . . . and take action that will assure the elimination of discriminatory acts or practices, or their prevention or recurrence." A.A.C. R10-3-412(A). Conciliation agreements must be in writing and executed by the complainant, respondent, and the State. *Id.* at (C)-(D). In conciliation, the State may seek monetary damages for complainants, "including compensatory damages and attorney fees," as well as equitable relief. *Id.* at (F).

## II. INTERVENTION AS OF RIGHT UNDER RULE 24(a)

No statute confers upon the State an unconditional right to intervene in actions brought under A.R.S. Title 41, Article 8. However, the State may intervene in certain other civil rights matters, subject to the Court's discretion, "upon a certification that the case is of general public importance." *See* A.R.S. § 41-1481(D). Although no similar statutory language is directly applicable here, the State requests the court to take into consideration that the State believes the cases filed by Plaintiff, due solely to their volume and effects, have become an issue of general public importance.

The public importance of this case is rooted in Plaintiff's efforts to obtain relief for thousands of claims for which Plaintiff has no valid legal basis or legal standing. The State possesses a strong interest in the Court's interpretation and application of the AZDA, including

-6-

the standards for allowing private parties to obtain relief. Plaintiff's lack of legal basis and standing threatens to severely impair and impede the State's enforcement duties.

Under Rule 24(a), a party must be permitted to intervene, upon timely application:

> [W]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 24 is a remedial rule that "should be construed liberally in order to assist parties seeking to obtain justice in protecting their rights." *Dowling v. Stapley*, 221 Ariz. 251, 270 ¶ 58 (App. 2009). A successful motion to intervene as of right must fulfill four elements: "(1) the motion must be timely; (2) the applicant must assert an interest relating to the property or transaction which is the subject of the action; (3) the applicant must show that disposition of the action may impair or impede its ability to protect its interest; and (4) the applicant must show that the other parties would not adequately represent its interests." *Woodbridge Structured Funding, LLC v. Ariz. Lottery*, 235 Ariz. 25, 28 ¶ 13 (App. 2014).

### A. THE STATE'S INTERESTS

The State holds a twofold interest in this action that warrants intervention as of right. The State's first interest is in ensuring the separation of powers memorialized in the Arizona Constitution remains robust and effective. No statute directly establishes this interest as one available to the State, but the Arizona Supreme Court has recognized that the Attorney General may make constitutionally based arguments when such arguments are "in support of [the Attorney General's] statutory authority[.]" *State ex rel. Woods v. Block*, 189 Ariz. 269, 273 (1997).[2] Here, the separation of powers issues presented by the Plaintiff's flood of improper and

---

[2] Unlike in *Woods*, the State is not seeking to be a Plaintiff in this case, so it does not need to establish its own standing. *See, e.g., Warth v. Seldin*, 422 U.S. at 498 ("[T]he standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as

unsupported lawsuits are a direct threat to the State's enforcement duties as well as the ongoing functioning of the Courts.

Plaintiff is circumventing the statutorily proscribed State enforcement process by claiming to "investigate" supposed violations of the federal Americans with Disabilities Act and the AZDA, while in reality apparently engaging in "trolling" litigation tactics designed to induce defendants into quick pre-suit or post-complaint settlement that merely enriches the Plaintiff.[3]

By signaling to other potential plaintiffs that it is more profitable to initiate litigation than enter the State's conciliation process or other pre-litigation settlement process, the Plaintiff imperils the State enforcement regime established by the Legislature. Plaintiff's tactics run contrary to the Legislature's expressed preference for resolving public accommodation and services complaints by means other than litigation, which applies equally to private action and State action. *See* A.R.S. § 41-1492.09(G) ("If appropriate, and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, fact-finding, mini-trials and arbitration, is encouraged to resolve disputes arising under this article."). Plaintiff's success in leveraging litigation tactics to obtain monetary relief for potentially invalid claims therefore directly affects the State's interests by impeding and impairing the State's investigation and enforcement duties and running directly counter to the Legislature's enforcement preference.

---

to warrant his invocation of federal-court jurisdiction."). And in any event, there is already one defendant who unquestionably has standing, so defendant standing—to the extent it is even required—is met. *See Ariz. Indep. Redistricting Comm'n v. Brewer*, 229 Ariz. 347, 351 ¶ 15 (2012) (citing *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189 n.7 (2008)).

[3] *See* Executive Office of the President, "Patent Assertion and U.S. Innovation" (2013), https://www.whitehouse.gov/sites/default/files/docs/patent_report.pdf (observing that "patent trolls" harm innovation in the United States by "focus[ing] on aggressive litigation, using such tactics [including] threatening to sue thousands of companies at once, without specific evidence of infringement against any of them.") Plaintiff's behavior here is analogous.

The Court's effectiveness is undermined by these tactics as well. Because Plaintiff's chief aim appears to be using the *in terrorem* effect of its serial litigation to produce out of court settlements, it is unlikely the Court will have the opportunity to evaluate the validity of most of Plaintiff's claims, much less whether Plaintiff is entitled to bring them at all. Moreover, unlike the results of the State's conciliation process, Plaintiff's tactics result in no enforceable agreement or court order, meaning there is no accountability to ensure any legitimate public accommodation or services violation is cured.

The State's second interest stems from the State's statutory enforcement duties concerning public accommodation and services disputes under the AZDA. *See* A.R.S. §§ 41-1492.06 and -1492.09. Given these duties, the State has a strong interest in how the Court interprets and applies this statutory scheme, which sufficiently warrants intervention of right. *See Weaver v. Synthes, Ltd. (U.S.A.)*, 162 Ariz. 442, 447-48 (App. 1989) ("courts have consistently found that the interest required to satisfy a Rule 24(a) [motion] must be based on a right which belongs to the proposed intervenor rather than to an existing party" (internal citations and quotation marks omitted)). Furthermore, the Court's interpretation and application of these statutes are likely to have a direct legal effect on the State's ability to effectively enforce the law by signaling whether private action is preferable to the State's conciliation process. *See Woodbridge Structured Funding*, 235 Ariz. at 28 ¶ 15.

### B. TIMELINESS AND ADEQUATE REPRESENTATION

The State's intervention motion is timely. When considering timeliness of a motion to intervene, the Court must consider several factors, such as the lawsuit's stage and whether intervention could have been sought earlier, but "[t]he most important consideration [in determining timeliness] is whether the delay in moving for intervention will prejudice the existing parties in the case." *State ex rel. Napolitano v. Brown & Williamson Tobacco Corp.*, 196 Ariz. 382, 384 ¶ 5 (2000). These factors all support the timeliness of the State's intervention. This case remains in its infancy. And the public importance of the matters posed

by Plaintiff's activities was not apparent until the full scope of Plaintiff's serial litigation and potential disruption of the separation of powers and the existing enforcement process became clear in recent weeks. Most importantly, the existing parties will not suffer prejudice because of the State's intervention; indeed, allowing the State to intervene will likely move this lawsuit and many others towards a more rapid and just resolution.

Furthermore, no private party can adequately represent the State's interests in this matter. *See Planned Parenthood Ariz., Inc. v. American Assn. of Pro-Life Obstetricians & Gynecologists*, 227 Ariz. 262, 279 ¶ 58 (App. 2011) ("The state must represent the interests of all people in Arizona...."). The statutory enforcement scheme enacted in A.R.S. Title 41, Article 8 establishes a unique process for the State to resolve public accommodation and services complaints and to seek civil penalties in appropriate cases. Only the State can represent and protect those interests.

### III. PERMISSIVE INTERVENTION UNDER RULE 24(b)

The State alternatively seeks permissive intervention under Rule 24(b). In relevant part, Rule 24(b) allows "anyone" to intervene "upon timely application" when "an applicant's claim or defense and the main action have a question of law or fact in common." Additionally, "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* As with Rule 24(a), Rule 24(b) should be construed liberally and "the intervenor-by-permission does not even have to be a person who would have been a proper party at the beginning of the suit." *Dowling*, 221 Ariz. at 272 ¶ 67 (quoting *Bechtel v. Rose*, 150 Ariz. 68, 72 (1986)). Ultimately, whether a party may intervene under Rule 24(b) is left to the adjudicating court's discretion. *See id.* at ¶ 16 (concluding trial court did not abuse its discretion in performing Rule 24(b) analysis).

The same reasons proffered for the State's intervention as of right also support allowing it to intervene permissibly. The State's interests in preserving the constitutional separation of powers and the effectiveness of its enforcement duties under the AZDA are significant public

interests that warrant the State's involvement. In addition, allowing the State to intervene will aid in properly addressing and resolving the serious jurisdictional questions that loom over the thousands of claims the Plaintiff has brought in this Court. Notwithstanding whether the Court allows the State to intervene, those jurisdictional questions remain, although in many cases they risk not being adjudicated if the original defendants fail to appear. In such cases, Plaintiff will prevail on claims for which there is no jurisdictional basis and obtain significant relief that is not properly provided for in law or statute. That result would jeopardize the AZDA's purposes as established by the Legislature, the State's enforcement efforts to enact that purpose, and the Court's ability to properly adjudicate valid claims.

Because permissive intervention is subject to the Court's discretion, the Court should allow the State to intervene because the State, through the Attorney General, has unique interests and expertise in the legal issues raised by Plaintiff's actions, which go to the very heart of fundamental separation of powers issues under Arizona law. The State's perspective, experience, and statutorily-established function in the operation of the AZDA would be helpful to the Court. Given these and ample other reasons to allow the State's intervention, the Court should not hesitate to exercise its discretion in allowing the State to intervene in this matter.

## IV. REQUEST FOR EXPEDITED CONSIDERATION

As previously noted on page 4, *supra*, Plaintiff appears to have begun filing applications for default against certain defendants. To minimize this and other harms, the State waives any reply and respectfully requests that this Court rules on this Motion to Intervene as soon as is practicable.

## V. CONCLUSION

For the foregoing reasons, the State respectfully requests that the Court grant the State's request to intervene as of right pursuant to Rule 26(a) or, in the alternative, permit the State to intervene pursuant to Rule 26(b). The State further requests that the Court give expedited consideration to this motion.

-11-

RESPECTFULLY SUBMITTED: August 24, 2016.

        MARK BRNOVICH,
        ATTORNEY GENERAL

BY: *[signature]*
Paul N. Watkins
Matthew du Mée
Brunn W. Roysden III
Oramel H. Skinner
John Heyhoe-Griffiths
Evan G. Daniels
Assistant Attorneys General

1 | Document electronically transmitted to the Clerk of the Court for filing using
2 | AZTurboCourt this 24th day of August, 2016.
3 |
4 | **COPY** of the foregoing HAND DELIVERED this 24th day of August, 2016 to
5 |
6 | Peter Strojnik, State Bar No. 6464
  | **STROJNIK, P.C.**
7 | 1 East Washington Street, Suite 500
  | Phoenix, AZ 85004
8 | (774) 768-2234
9 | Scott F. Frerichs
  | Lindsay G. Leavitt
10 | **JENNINGS, STROUSS, & SALMON, P.L.C.**
11 | 1 East Washington St., Suite 1900
   | Phoenix, Arizona 85004-2554
12 | sfrerichs@jsslaw.com
   | lleavitt@jsslaw.com
13 | *Attorneys for Defendants*
14 |
15 | Courtesy copies of the foregoing also mailed and e-delivered using TurboCourt
16 |
   | /s/     Kim Cundiff
17 |

-13-