

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810    Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
Lawrence J. Felder, #019763
John D. Wilenchik, #029353
Brian J. Hembd, #029817
admin@wb-law.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Advocates for Individuals with Disabilities Foundation Incorporated,**<br>                    Plaintiff;<br>v.<br>**Golden Rule Properties LLC,**<br>                    Defendant. | Case No.  2:16-cv-02413-PHX-GMS<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF IN RESPONSE TO ORDER TO SHOW CAUSE**<br><br>(Assigned to the Honorable G. Murray Snow) |

   Plaintiff Advocates for American Individuals with Disabilities Foundation Incorporated ("Plaintiff," or "AID") and Peter Strojnik, Esq. and Fabian Zazueta, Esq. hereby file their Supplemental Brief[1] to address the issue of whether a corporation or limited liability company's "members" (for purposes of the "membership" prong of the "associational standing"[2] analysis in

---

[1] A copy of this brief is being concurrently filed in 2:16-cv-02413-PHX-GMS, 2:16-cv-02298-PHX-GMS, and  2:16-cv-02141-PHX-GMS.

[2] The issue might be more precisely termed "organization standing" – *see e.g.* 13 Wright and Miller, Federal Practice and Procedure § 3531.9.5 (entitled "Rights Of Others—**Organization Standing**") – so as to avoid confusion with the separate but related issue of "association" standing under the ADA (i.e., the standing of a parent or "associate" of a person with disability to sue, pursuant to 42 U.S.C. § 12182(b)(1)(E). *See e.g. George v. AZ Eagle TT Corp.*, 961 F. Supp. 2d 971, 974 (D. Ariz. 2013): "[T]o state a valid claim for association discrimination ... a plaintiff must allege some 'specific, direct, and separate injury' as a result of association with a disabled individual."

*Hunt*)[3] must also be "members" of the LLC (as the term "member" is defined by the Arizona Limited Liability Company Act[4]) or shareholders of the corporation, in order for the entity to have standing to sue on their behalf.

In general, the cases "reflect little concern" on the issue of whether a formal legal structure (such as the corporate form) governs organizational standing, because "[n]o formal legal structure is needed to support organization standing" in the first place. 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3531.9.5 at n.75 (3d ed.); *see also Families Achieving Independence & Respect v. Nebraska Dept. of Social Services*, 890 F. Supp. 860, 867 n. 7 (D. Neb. 1995), *quoting* Wright, Miller & Cooper, *decision rev'd on other grounds*, 91 F.3d 1076 (8th Cir. 1996) *and aff'd*, 111 F.3d 1408 (8th Cir. 1997). In *Families Achieving Independence* (discussed by Wright & Miller), the district court held that a plaintiff association which had "no membership list," "was not incorporated," and whose "members" were merely two "staff members" who were not even the source of its funding, had associational standing to sue on behalf of the members. *Id.* The court noted that no formal legal structure was required for associational standing, and that the lack of one did not warrant an adverse ruling on the standing question.

---

[3] *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (U.S. 1977): "…we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

[4] Ariz. Rev. Stat. Ann. § 29-601(12): " 'Member' means a person who is admitted as a member in a limited liability company pursuant to this chapter until an event of withdrawal occurs with respect to the person and, if reference is made to members, that reference means a member in the case of a limited liability company that has a single member. A member includes a noneconomic member of a limited liability company who: (a) Does not own a member's interest in the company. (b) Does not have an obligation to contribute capital to the company. (c) Does not have a right to participate in or receive distributions of profits of the company or an obligation to contribute to the losses of the company. (d) May have voting rights and other rights and privileges as prescribed by the articles of organization or operating agreement."

Further, and as an even more general proposition, the legal form of an organization under state law should not affect its federal standing. *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 828 (5th Cir. 1997)(discussing *Sierra Ass'n for Env't v. F.E.R.C.*, 744 F.2d 661, 662 (9th Cir. 1984)("the Ninth Circuit held that an organization's form under state law does not affect its federal standing")). In the case of *Sierra Association for Environment v. Federal Energy Regulatory Commission*, the Ninth Circuit found that even though the plaintiff nonprofit corporation had been suspended as a corporation under state law, it nevertheless had standing to sue under federal law (as an unincorporated association, pursuant to current Fed.R.Civ.P. 17(b)(3)(A)[5]). The Ninth Circuit remarked that the corporation's capacity to sue under California law (or lack thereof) was "irrelevant" to a determination of Article III standing. *Id.* (quoting *Sierra Association*, 744 F.2d at 662).

More germane to the present inquiry (into a nonprofit corporation's "organization" standing): in *Friends of the Earth, Inc. v. Chevron Chem. Co*, the Fifth Circuit found that a nonprofit corporation had organizational standing to file suit on behalf of its "members," even though the district court found that the corporation "had no legal members under the corporate laws of the District of Columbia." *Friends of the Earth, Inc.*, 129 F.3d at 827, 828. "The officers of [the plaintiff corporation] simply followed a practice of considering all those who gave a donation, as well as those who had a donation made in their name, to be members." *Id.* at 827. The Fifth Circuit reversed the district court's ruling that the corporation's "members" did not qualify to give the corporation Article III standing, because "[w]hile a corporation's failure to comply with state and internal rules for identification of its members might be relevant to the issue of whom the corporation represents, we do not believe this defect should overshadow the

---

[5] The *Sierra Association* opinion refers to Fed.R.Civ.P. 17(b)(1), which was the corresponding section prior to the amendments in 2007.

3

considerable activities of [the plaintiff corporation] with and for those persons its officers and staff have consistently considered to be members." *Id.*, 129 F.3d at 828. To reach its conclusion, the Fifth Circuit looked not only at the Ninth Circuit's decision in *Sierra Association*, but also to the *Hunt* decision itself. *Id.* at 828-829. In *Hunt*, the plaintiff organization (a state "Commission") had no members under state law, but the Supreme Court performed a "functional" analysis to determine "whether the nature of the relationship between the [organization] and the relevant interests of [its members] satisfied the goals of the constitutional standing requirement," and so as not to "exalt form over substance." *Id.* at 828 (discussing and quoting *Hunt*). "[T]he policy underlying the decision in *Hunt*, as well as the decisions in other circuits, supports holding that the 'indicia of membership' test is the correct one to apply to determine whether a purported corporation, despite the failure to meet state law requirements, has 'members' whose interests it can represent in federal court." *Id.* at 829. "To meet the requirements of organizational standing, [the corporation plaintiffs] need only prove that their members possess the 'indicia of membership' in their organizations." *Id.* (*quoting Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 119 (3d Cir. 1997): "[defendant's] counsel also contended at oral argument that [the plaintiff corporations] lacked standing because their charters prohibit them from having members. We do not accept this formalistic argument because it lacks merit…")

In the context of organizational standing under the ADA, the Ninth Circuit has also disregarded as "overly formalistic" an argument that organization members must "actually control [the organization's] activities and finances," and that the organization must have a "direct membership linkage" to its members in order to have standing. *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1110 (9th Cir. 2003). In *Oregon Advocacy*, the Ninth Circuit found that the "members" of a statutorily-established "protection and advocacy" center possessed the "indicia of membership," even though "[a]dmittedly, [plaintiff's members] do not have all the

indicia of membership that the *Hunt* [members] possessed": specifically, its members did not primarily fund the organization, did not exclusively choose its leadership, and did not exclusively serve on its leadership bodies. *Id.* at 1111. However, its members consisted of persons with disabilities or their family, who either participated on its board of directors, or on an "advisory" board (and as a majority in each). *Id.* "[The organization's] constituents do possess many indicia of membership—enough to satisfy the purposes that undergird the concept of associational standing: that the organization is sufficiently identified with and subject to the influence of those it seeks to represent as to have a 'personal stake in the outcome of the controversy.'" *Id.*

The test announced by *Oregon Advocacy* is the appropriate test for the Court to apply: whether the organization has enough "indicia of membership" to ensure that it is sufficiently identified with and subject to the influence of its members. This test is not subject to the rigid formalism of whether a member is actually termed a "member" or "stockholder" under state law. Here, the test is met because Plaintiff AID exists primarily to advance the purposes of the ADA through serial litigation; and as "testers"/plaintiffs, its members authorize and participate in the filing of its suits, and exert influence over whether and when a public accommodation is inspected, visited, and/or sued.

To cut to the heart of the "organizational standing" issue, the "line seems be drawn" when a member is not even a "part" of the organization; i.e. the member is merely a "client" of the organization, or is merely being "served" by it. *See e.g. Northeast Ohio Coalition for Homeless and Service Employees Intern. Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1010 & n. 4 (6th Cir. 2006)(discussed by Wright and Miller, § 3531.9.5 at n.75)(finding complaint to be deficient because it "did not identify any member injured," but rather asserted standing "on behalf of the group [of homeless persons] served," which was found to be "a form of representational standing never recognized by any court"); *see also Association for Retarded*

*Citizens of Dallas v. Dallas County Mental Health & Mental Retardation Center Bd. of Trustees*, 19 F.3d 241, 244, 5 A.D.D. 52 (5th Cir. 1994)(finding that "advocacy association championing the interests of disabled persons" could not establish standing to redress injury to "a particular retarded child" where child was in effect a "client" of the organization and "unable to participate in and guide the organization's efforts"). In contrast to such cases, AID's members actively participate in, guide, and are identified with its serial-litigation efforts.

Finally, while a "member" for Article III purposes need not be a "member" for purposes of the Arizona LLC Act, the converse is also true: a "member" under the LLC Act (or corporate stockholder under state law) may not always qualify as a "member" under Article III. "There are so many varieties of more or less formal organizations in our society, and so many variations in the forms of affiliation with real people, that practical experience may often justify a focus on the nature of the relationships that justify representation as to a particular claim rather than on more abstract theories of membership as such." Wright and Miller at § 3531.9.5. "Indeed standing may be more appropriate as to some looser forms of organization than as to associations whose members have little choice whether to be members and have divergent interests. And care should be taken with organizations that ordinarily would not be expected to undertake litigation on behalf of their constituents. An ordinary commercial corporation, for example, generally should not be permitted to borrow standing from injured stockholders."[6] *Id.* Therefore, the mere fact that a person is an LLC member or a stockholder under state law may actually weight *against* whether they qualify as a "member" for purposes of Article III; and in any event, their state-law status will have little to no bearing on the constitutional analysis.

---

[6] "But in some circumstances it may be appropriate to allow a closely held family corporation to represent the interests of its owners, at least if there is no apparent conflict of interests among the owners, and perhaps despite the lack of any apparent reason why the owners cannot bring suit on their own." Wright and Miller at § 3531.9.5.

## CONCLUSION

For the foregoing reasons, members of an organization such as AID need not be "members" for purposes of the Arizona LLC Act, or stockholders, in order to qualify as "members" for purposes of Article III. The Court looks to the substance of the relationship, not the form. And because whether or not an Article III "member" is a "member" for purposes of the Arizona LLC Act (or a corporate shareholder under state law) can weigh *against* the finding of Article III membership, just as well as it can weigh in favor it, it is effectively "irrelevant" to the Article III analysis.

**RESPECTFULLY SUBMITTED** October 4, 2016.

**WILENCHIK & BARTNESS, P.C.**

 */s/ John D. Wilenchik*
Dennis I. Wilenchik, Esq.
Lawrence J. Felder, Esq.
John D. Wilenchik, Esq.
Brian J. Hembd, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2016, I electronically transmitted the attached document using the CM/ECF system for filing, and which will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

*/s/ Christine M. Ferreira*