1              UNITED STATES DISTRICT COURT

2               FOR THE DISTRICT OF ARIZONA
                 _____

3

Advocates for American,        )
4  Disabled Individuals, LLC,      )
and David Ritzenthaler,        )
5                               )   No. CV 16-2141-PHX-GMS
              Plaintiffs,      )
6                               )
7         vs.                  )
                               )
The Price Company,            )
8                               )
_____Defendant.____)
9  Advocates for American,       )
Disabled Individuals, LLC,     )
10                              )   No. CV 16-2298-PHX-GMS
              Plaintiff,       )
11                              )
12        vs.                  )
                               )
Superstition Springs LLC.,     )
13                              )
_____Defendant.____)
14 Advocates for American,       )
Disabled Individuals, LLC,     )
15                              )   No. CV 16-2413-PHX-GMS
              Plaintiff,       )
16                              )
        vs.                  )   Phoenix, Arizona
17                              )   September 29, 2016
Golden Rule Properties, LLC., )   2:33 p.m.
18                              )
_____Defendant.____)
19

20       BEFORE:  THE HONORABLE G. MURRAY SNOW, JUDGE
           REPORTER'S TRANSCRIPT OF PROCEEDINGS
               (Show Cause Hearing)
21

Official Court Reporter:
22 Laurie A. Adams, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
23 401 West Washington Street, Spc 43
Phoenix, Arizona 85003-2151
24 (602) 322-7256
Proceedings Reported by Stenographic Court Reporter
25 Transcript Prepared by Computer-Aided Transcription

```
1    APPEARANCES:

2    For the Plaintiffs:
             WILENCHIK & BARTNESS PC
3            By:  John D. Wilenchik, Esq.
             2810 N. 3rd Street, Suite 103
4            Phoenix, Arizona 85004

5            ADVOCATES FOR INDIVIDUALS WITH DISABILITIES
             By:  Fabian Zazueta, Esq.
6            40 N. Central Avenue, Suite 1400
             Phoenix, Arizona 85004

7
             STROJNIK PC
8            By:  Peter Strojnik, Esq.
             1 E. Washington Street, Suite 500
9            Phoenix, Arizona 85004

10   For the Defendant Price Company:
             KRASNOW SAUNDERS KAPLAN & BENINATI LLP
11           By:  Charles A. Valente, Esq.
             500 N. Dearborn Street, 2nd Floor
12           Chicago, Illinois 60654

13           BERGIN FRAKES SMALLEY & OBERHOLTZER PLLC
             By:  Donna H. Catalfio, Esq.
14           4343 E. Camelback Road, Suite 210
             Phoenix, Arizona 85018

15
     For the Defendant Superstition Springs:
16           JONES SKELTON & HOCHULI PLC
             By:  David C. Potts, Esq.
17           40 N. Central Avenue, Suite 2700
             Phoenix, Arizona 85004

18
     For the Defendant Golden Rule Properties:
19           JABURG & WILK PC
             By:  Aaron K. Haar, Esq.
20           3200 N. Central Avenue, Suite 2000
             Phoenix, Arizona 85012

21

22

23

24

25
```

1                              **I N D E X**

2    **WITNESS:**              **DIRECT**     **CROSS**      **REDIRECT**   **RECROSS**

3    PETER STROJNIK
     By Mr. Wilenchik         37
4    By Mr. Haar                            41

5    FABIAN ZAZUETA
     By Mr. Wilenchik         43                          51
6    By The Court                           46

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1                   P R O C E E D I N G S

2           THE COURTROOM DEPUTY:  This is Civil Case Number

3   16-2141, Advocates for American Disabled Individuals, LLC, et

4   al, v. Price Company, on for show cause hearing.

5           Counsel, please announce your appearances.                02:33PM

6           MR. WILENCHIK:  John Wilenchik, Peter Strojnik, and

7   Fabian Zazueta on behalf of the plaintiffs, Advocates for

8   American Disabled Individuals, LLC, and David Ritzenthaler.

9           MR. VALENTE:  Good afternoon, Your Honor.  Charles

10  Valente and Donna Catalfio on behalf of Costco Wholesale        02:34PM

11  Corporation.

12          THE COURT:  Good afternoon to you both.

13          Who is going to be doing the arguing?

14          MR. WILENCHIK:  I will be doing the argument on behalf

15  of the plaintiffs, Your Honor.                                  02:34PM

16          MR. VALENTE:  And I will, Your Honor.

17          THE COURT:  Mr. Wilenchik, I ordered you to show

18  cause.  I have read your brief.  Do you have anything you wish

19  to add?

20          MR. WILENCHIK:  Your Honor, may I approach the podium?  02:34PM

21          THE COURT:  You can.

22          MR. WILENCHIK:  Mainly, Your Honor, I'm here to answer

23  questions you may have, but I do have one point additionally to

24  make to what's been said in the briefs.

25          THE COURT:  All right.                                  02:34PM

─────────────── September 29, 2016 - CV 16-2141 ───────────────

1        MR. WILENCHIK:  If the Court's decision today is to

2    dismiss for lack of Article III standing, there is case law to

3    support that a remand would be appropriate to state court

4    unless it would be a futile act.  And our argument would be

5    it's not a futile act because under the Arizona Constitution,          02:35PM

6    standing is a prudential matter.  It's a more liberal analysis

7    that is up to the discretion of the Court.

8        THE COURT:  So you are saying the state court should

9    make a determination whether or not it would take up a federal

10   claim based on state standing rules?                                   02:35PM

11       MR. WILENCHIK:  That's correct, in the event this

12   Court determines --

13       THE COURT:  Even if I think that there is no standing

14   in federal court.

15       MR. WILENCHIK:  Correct.  If the Court determines          02:35PM

16   there's no subject matter jurisdiction due to lack of Article

17   III standing in this Court, a remand to state court is

18   appropriate.

19       THE COURT:  Let me ask, you have asserted

20   associational standing and your client has all kinds of               02:35PM

21   different corporations and entities by which it's done this.

22   Is Mr. Ritzenthaler somebody -- well, who are the members of

23   Advocates for American Disabled Individuals, LLC?

24       MR. WILENCHIK:  The members who we believe have

25   standing for these cases, we have named David Ritzenthaler and        02:36PM

—————September 29, 2016 - CV 16-2141—————

1   Shannon Puckett.

2          THE COURT:  Clearly, Mr. Ritzenthaler doesn't have

3   standing.  Right?

4          MR. WILENCHIK:  He does have standing, and the reason

5   we haven't pushed, so to speak, on the issue of his standing is    02:36PM

6   because these cases identify issues with van accessibility.

7   Mr. Ritzenthaler does have a handicapped card.  He does have a

8   mobility issue.  He needs a cane.

9          THE COURT:  He's never been to this Costco?

10         MR. WILENCHIK:  Correct.                                    02:36PM

11         THE COURT:  Okay.  So if I determine he has to have

12  been to this Costco, he doesn't have standing?

13         MR. WILENCHIK:  Correct.

14         THE COURT:  And the Association cannot base any

15  standing on Mr. Ritzenthaler who has never been to this Costco?   02:36PM

16         MR. WILENCHIK:  Correct.

17         THE COURT:  Okay.  What about, let me ask, though, is

18  Mr. Ritzenthaler a member of the LLC?

19         MR. WILENCHIK:  He is.

20         THE COURT:  And what do you have to do to be a member    02:36PM

21  of this LLC?

22         MR. WILENCHIK:  The members are what are commonly

23  referred to as testers.  They need to agree to --

24         THE COURT:  No.  I mean, what are the legal

25  requirements to be a member of an LLC?                           02:37PM

 1          MR. WILENCHIK:  Let me be clear on the Court's

 2  question.  A member of an LLC -- is the Court asking whether

 3  they are owners in terms of --

 4          THE COURT:  Yeah.  That's what you have to be to be a

 5  member of an LLC, is to be an owner, don't you?                02:37PM

 6          MR. WILENCHIK:  Let me be clear on the question.  I do

 7  not believe he's a member.  I will have to -- okay.  He's not a

 8  member in the sense of the Arizona LLC Act of being an owner.

 9          THE COURT:  So how can you assert associational

10  standing on behalf of somebody who is not a member of your      02:37PM

11  association?

12          MR. WILENCHIK:  The way the word "member" is used

13  under federal standing law is not equivalent to the meaning of

14  the word member --

15          THE COURT:  Do you have any authority for that?         02:37PM

16          MR. WILENCHIK:  I can find the authority for it and

17  brief it.  To say that -- the one case is *Hunt* that mainly, the

18  Supreme Court case that talks about -- it's not so much we

19  should probably call it organizational standing.  Because

20  associational standing is something kind of different under ADA 02:37PM

21  analysis.

22          THE COURT:  Let me make it clear.  You are asserting

23  organizational, not associational, standing?

24          MR. WILENCHIK:  Correct.  We're actually stating both

25  the case of Shannon Puckett, but yes.                           02:38PM

———— September 29, 2016 - CV 16-2141 ————

1    THE COURT:  So you are saying somehow Mr. Ritzenthaler

2    is a member of the organization, although he's not a member of

3    the LLC that's the plaintiff here?

4    MR. WILENCHIK:  Correct.  He's not a member in the

5    sense of being owner as member is defined in the Arizona LLC        02:38PM

6    Act, that is correct.

7    THE COURT:  And neither is Ms. Puckett?

8    MR. WILENCHIK:  That is correct.

9    THE COURT:  So can you just broadly assert

10   organizational standing on behalf of whoever you want to assert     02:38PM

11   it and say that that gives your organization standing to bring

12   a lawsuit?

13   MR. WILENCHIK:  Your Honor raises a good point.  I

14   think they need to agree to be members and participate in what

15   the organization does.                                             02:38PM

16   THE COURT:  Clearly now your complaint is deficient in

17   any event, correct?

18   MR. WILENCHIK:  To the extent it does not identify

19   that we're asserting standing on behalf of members, yes, Your

20   Honor.                                                             02:38PM

21   THE COURT:  And Ms. Puckett may not be able to bring a

22   suit in any event, right?

23   MR. WILENCHIK:  We believe she does.

24   THE COURT:  Well, how?  I mean, she didn't show up to

25   the place until after the problem was corrected.                   02:39PM

—————— September 29, 2016 - CV 16-2141 ——————

1        MR. WILENCHIK:  I believe that she did show up before

2   the problem was corrected.  But even setting that aside, we

3   have briefed that it's not necessarily to have actually visited

4   the property.

5        THE COURT:  Let's assume, and it's a pretty safe          02:39PM

6   assumption, I'm going to reject that argument.  What you have

7   indicated to me in the briefing is that as of 9/22 Ms. Puckett

8   had visited the premises.  But the problem, per the affidavit

9   that's been filed in the briefing has been fixed well before

10  that date.                                                      02:39PM

11       MR. WILENCHIK:  The affidavit in the briefing -- the

12  affidavit from the defendants saying that the problem had been

13  fixed, correct, Your Honor.

14       THE COURT:  Yes.

15       MR. WILENCHIK:  Um --                                      02:39PM

16       THE COURT:  You can't actually acquire standing to

17  bring a problem that has already been fixed by showing up after

18  it's been fixed, can you?

19       MR. WILENCHIK:  In the case of Costco, that wasn't the

20  first time she visited.  She was very near the Costco.          02:39PM

21       THE COURT:  I'm sorry.  What?

22       MR. WILENCHIK:  In the case of Costco, which is the

23  defendant in this case, that wasn't the first time she visited.

24       THE COURT:  Sure looks like it in her brief.

25       MR. WILENCHIK:  She has visited on multiple times          02:40PM

———September 29, 2016 - CV 16-2141———

1    prior to that.

2         THE COURT:  Let me read you what her affidavit says.

3    Maybe this is another problem that I have concerns about which

4    we'll raise a little later on.  But you filed the same

5    affidavits, the same complaints.  You don't tailor anything          02:40PM

6    here.  I think you've maybe got Rule 11 problems.  Certainly I

7    have already raised that your client as an individual attorney

8    may have problems under the statute that we'll discuss later.

9    But according to her affidavit, in this one, "I have been

10   informed that the parking lot does not have" -- I'm sorry.          02:40PM

11   That's the wrong case.  I do it too.

12        "I have been informed that the parking lot at 4502

13   East Oak Street in Phoenix, 'the lot,' does not have van

14   accessible signage that is at least 60 inches above the ground

15   as required by the ADA."  So she has never made that               02:41PM

16   observation prior to filing her affidavit, has she?

17        MR. WILENCHIK:  I believe she has, Your Honor.

18        THE COURT:  Well, sure doesn't look like it from the

19   text of her affidavit.

20        MR. WILENCHIK:  The issue we have here, I think, the          02:41PM

21   concern I have is whether or not we need to have an evidentiary

22   hearing to resolve this or these kind of issues.

23        THE COURT:  You are here on an order to show cause.

24   Do you have witnesses to present?

25        MR. WILENCHIK:  Based on the order to show cause I            02:42PM

—————— September 29, 2016 - CV 16-2141 ——————

```
 1    believe this was a facial attack, so to speak, a facial
 2    challenge.
 3              THE COURT:  You can just answer yes or no.  Do you
 4    have any witnesses you want to bring?
 5              MR. WILENCHIK:  I do not have Shannon here, no, Your     02:42PM
 6    Honor.
 7              THE COURT:  So I'm left with her affidavit, aren't I?
 8              MR. WILENCHIK:  That's correct, Your Honor.  And the
 9    only point I have to make there is the mere fact she says she's
10    been informed of it doesn't mean she had not visited             02:42PM
11    previously.
12              THE COURT:  It certainly suggests that she didn't make
13    any personal observations.
14              MR. WILENCHIK:  It would suggest, but I don't believe
15    that's the truth.                                                02:42PM
16              THE COURT:  Well, all right.  Anything else?
17              MR. WILENCHIK:  I will just repeat that the issue with
18    remand, if the Court's determination is there is no standing
19    under Article III, the determination of standing under the
20    Arizona Constitution again is prudential.  I don't believe the   02:42PM
21    Court can say with absolute certainty that a remand would be
22    futile, and an Arizona court may still make a different
23    determination as a standing.
24              THE COURT:  Thank you.
25              MR. WILENCHIK:  Thank you, Your Honor.                  02:43PM
```

September 29, 2016 - CV 16-2141

1    THE COURT:  Mr. Valente, do you have anything to add

2    that hasn't been covered by my questions?

3         MR. VALENTE:  I'm not even going to touch those

4    topics, Your Honor.  Briefly, I just wanted to, if I could,

5    make a couple points in response to some things that we were          02:43PM

6    unable to address in the briefing, either because they came up

7    in the reply or they were mentioned just now.

8         THE COURT:  Can you pull both of those microphones

9    over so I can hear you better?  I'm sorry.  As I get holder I

10   should probably consider hearing aids but I'm too vain to do          02:43PM

11   it.

12        MR. VALENTE:  I don't blame you for that, Judge.

13        I will deal with the first issue you raised about the

14   Arizona Disabilities Act and they're saying that at this point

15   they don't want to address the standing under the state             02:44PM

16   constitution in front of this Court.  And I think that's a

17   little bit too late to come in at the 11th hour and say, after

18   the judge, Your Honor, orders them to show cause why they have

19   standing, to say well, we're not going to address it here

20   because it should just go to the state court.  They should have     02:44PM

21   made that argument in their briefs is my point, Your Honor.

22        THE COURT:  Well, maybe they should have.  But let me

23   tell you what I understand Mr. Wilenchik's argument to be,

24   which wasn't quite that.  He was saying, look, you can dismiss

25   this claims from federal court finding there's no standing to       02:44PM

1    bring it in federal court, but you can't dismiss the claim

2    without prejudice because the state court, where standing rules

3    are more liberal, may find that there's no standing but they

4    may find that there's standing.

5            MR. VALENTE:  And I believe that Your Honor has the                02:44PM

6    authority to act on that claim and dismiss it for lack of

7    standing with prejudice even under the state law.

8            THE COURT:  How so?

9            MR. VALENTE:  Your Honor has concurrent jurisdiction

10   with both the federal claim and the state law claim.  And if           02:44PM

11   Your Honor can resolve both claims today, you can do so.

12           THE COURT:  And I'm sorry, I do get a little confused

13   with these claims.  Is there is state and federal claim

14   asserted here, both claims?

15           MR. VALENTE:  It's an interesting complaint.  There's          02:45PM

16   apparently one count, but in that one count they mention both

17   the Americans With Disabilities Act and the Arizonians With

18   Disabilities Act.

19           THE COURT:  All right.  So I couldn't -- are you

20   suggesting that I could dismiss both the federal and the state        02:45PM

21   claim today?

22           MR. VALENTE:  Yes, I think you could, Your Honor.

23   That's well within your authority.

24           THE COURT:  All right.  Do you have any authority for

25   that proposition?                                                      02:45PM

────────── September 29, 2016 - CV 16-2141 ──────────

1      MR. VALENTE:  I do not have any in front of me today

2  because this argument was raised for the first time at the

3  hearing today, which is why I'm objecting.

4      THE COURT:  Even if there is authority, and there may

5  be, wouldn't it prudentially be wiser to remand both claims to          02:45PM

6  the state court and let them decide what their own standing is?

7      MR. VALENTE:  This is essentially the same question

8  Your Honor faces in any litigation where federal question is

9  raised along with a state question.  And under Section 1367 you

10  have supplemental jurisdiction over the state law claim.          02:46PM

11      THE COURT:  Right.  If they find -- the general rule

12  of the Ninth Circuit is that if I find that there is no federal

13  claim, there is really no jurisdiction granting claim, and I

14  should remand.  That's what the general law is in the Ninth

15  Circuit.          02:46PM

16      MR. VALENTE:  Your Honor, my understanding of the law,

17  which, again, we didn't brief it because I didn't know the

18  issue was going to come up.

19      THE COURT:  You impressed me on that.

20      MR. VALENTE:  Nonetheless, my understanding is when          02:46PM

21  the Court rules as a matter of law and is able to resolve all

22  the issues at the same time, then it's proper for the Court to

23  enter judgment on both the federal claim and the state claim.

24  It's only when some other questions would need to be resolved

25  that the proper decision is to remand.          02:46PM

1          THE COURT:  All right.  I get your point and I will

2     take a look at it.  Next point?

3          MR. VALENTE:  Yes, Your Honor.  I do want to mention

4     something here.  We made an argument based on *Spokeo* that                02:46PM

5     there's no concrete harm here.  And there's some other cases

6     that are on the docket, which at the time I briefed it I

7     weren't really as aware as I am now.  I want to mention there's

8     a critical difference in our case to those other cases.

9          The difference in our case is there's no missing

10    signage in our case.  The issue here is the height of the                   02:47PM

11    signage we had and whether that signage was at the appropriate

12    height.  As I understand it, they are arguing that not their

13    client but Ms. Puckett was harmed because if there was a

14    vehicle parked in the space she couldn't see over that vehicle

15    to see our signage to know if that was a space she could park              02:47PM

16    in.

17         And our position on that is that there's no harm to

18    her in any event, because if the space is occupied she can't

19    park on it in any event.  And when the space is unoccupied

20    there's no issue.  There's no impairment of her ability to see            02:47PM

21    the signage for that space.

22         THE COURT:  Okay.

23         MR. VALENTE:  It always takes longer to just cut out

24    the stuff you thought you were going to say, Your Honor, so if

25    you will just bear with me.                                                02:48PM

─────── September 29, 2016 - CV 16-2141 ───────

1              THE COURT:  Let me ask you a question.

2              MR. VALENTE:  Sure.

3              THE COURT:  Is there any pending motion by plaintiffs

4    to dismiss their federal claim in this case?

5              MR. VALENTE:  There is not.  By plaintiffs?  No, Your          02:48PM

6    Honor.

7              THE COURT:  Thank you.

8              MR. VALENTE:  Your Honor, I think I don't need to

9    address the remainder of what I have.  With your leave, if Your

10   Honor doesn't intend to rule on the motion now but intends to          02:48PM

11   hear the arguments in the other cases, with your leave I'd like

12   to stay in court in case some issue comes up.

13             THE COURT:  You may have that leave.

14             MR. VALENTE:  Thank you, Your Honor.

15             THE COURT:  Do you have anything more on this matter,         02:48PM

16   Mr. Wilenchik, quickly?

17             MR. WILENCHIK:  Just quickly, Your Honor, you know, I

18   appreciate counsel's point about briefing this issue to the

19   remand.  There certainly is case law.  There's certainly

20   statute I think to his point.  The distinction is this is not a        02:49PM

21   dismissal on the merits, which certainly the Court can dismiss

22   both.  This would be a dismissal for lack of subject matter

23   jurisdiction.  And 28 USC --

24             THE COURT:  Does that amount to a dismissal on the

25   merits?                                                                02:49PM

───────── September 29, 2016 - CV 16-2141 ─────────

1      MR. WILENCHIK:  It does not.  In fact, 28 USC Section

2  1447(c) says if at any time before final judgment it appears

3  the district court lacks subject matter jurisdiction or a case

4  removed from state court, the case shall be remanded.

5      THE COURT:  Okay.                                    02:49PM

6      MR. WILENCHIK:  This applies to cases that lack

7  standing.  There's a Ninth Circuit case, appears to be very

8  recent one August 18th, 2016.  I have like a Westlaw citation

9  for it, Your Honor, if you would like it.

10      THE COURT:  It's all right.                          02:49PM

11      MR. WILENCHIK:  Okay.  Otherwise, if Your Honor would

12  like to hear about the *Spokeo* issue, it is an interesting

13  issue, but I don't know that it is raised by the order to show

14  cause.

15      THE COURT:  He does have a point, right?  If your     02:50PM

16  assertion is, I mean, I think *Spokeo* is one of those cases that

17  is really going to be interesting to try to apply.  But Mr.

18  Valente's point is not completely without some purchase, right?

19      MR. WILENCHIK:  That's why I would like to address it.

20      THE COURT:  Your issue is I can't see it when the     02:50PM

21  stall is occupied.  You can't occupy a stall that's been

22  occupied.  And if it's not occupied, if it's just a couple of

23  inches low, you can see it.

24      MR. WILENCHIK:  The issue there is there may be cars

25  next to it, that kind of thing.  *Spokeo* to me stands for the  02:50PM

─────── September 29, 2016 - CV 16-2141 ───────

1   proposition that, you know, you may have of what's a violation

2   of statute but it may not be real harm.  For example, if the

3   statute says, Jack Wilenchik should never have a million

4   dollars.  I have a million dollars, sure it's a violation of

5   statute but there's no harm.  I have got a million dollars.        02:50PM

6          Here, that is a harm which is lack of visibility.  And

7   *Spokeo* doesn't stand for the idea that it's a matter of degree

8   of harm, that if you don't have a big enough harm or something

9   of that sort.

10         THE COURT:  I'm sorry.  I should have read through the     02:51PM

11  statute more clearly.  But does the statute define what the

12  basis of calculating harm is what the remedies are for that

13  harm?

14         MR. WILENCHIK:  It specifics in the case the sign

15  should be at least 60 inches above the ground.                     02:51PM

16         THE COURT:  Does the statute itself specify that?

17         MR. WILENCHIK:  It's, I believe, the regulations

18  pursuant to statute.

19         THE COURT:  I'm sorry?

20         MR. WILENCHIK:  It's the regulations that have been --      02:51PM

21         THE COURT:  But doesn't that present an interesting

22  *Spokeo* problem in and of itself?

23         MR. WILENCHIK:  It raises the issue.  But again, I

24  believe the point to *Spokeo* is not that it's a matter of degree

25  of harm just that there be harm.                                   02:51PM

─────────── September 29, 2016 - CV 16-2141 ───────────

1        THE COURT:  Let me ask you another question.  I'm

2    sorry.  I'm kind of hopping quickly.  If there's been a

3    determination that the statute's been violated whether or not

4    it's regulation or the statute, what's the remedy the statute

5    provides?                                                    02:51PM

6        MR. WILENCHIK:  The statute provides for injunctive

7    relief under the federal statute, under the federal ADA.

8        THE COURT:  Right.

9        MR. WILENCHIK:  Arizona ADA.

10       THE COURT:  Does it provide any monetary damage?        02:52PM

11       MR. WILENCHIK:  Federal does not; Arizona does.

12       THE COURT:  Okay.  So you don't have any -- I mean,

13   *Spokeo* is *Spokeo*.  You don't have any standing, right?

14       MR. WILENCHIK:  There's harm there, which is

15   sufficient for standing.  There's not monetary damage available  02:52PM

16   as a relief.  But there is --

17       THE COURT:  Does the Arizona statute incorporate the

18   federal regs in interpreting the Arizona rule statute?

19       MR. WILENCHIK:  Yes, it does.

20       THE COURT:  Okay.  Thank you, Mr. Wilenchik.            02:52PM

21       MR. VALENTE:  Your Honor, if I might briefly?

22       THE COURT:  Very.

23       MR. VALENTE:  I want to --

24       THE COURT:  Grab that microphone, please.

25       MR. VALENTE:  I'm sorry, Your Honor.                    02:52PM

September 29, 2016 - CV 16-2298

1    I want to point out that the regulation that we're

2    talking about is the 2010 regulation.  There was a prior

3    regulation, a 1991 regulation, that did not require the height

4    of 60 inches, and the 2010 regulation expressly states that if

5    you are in compliance with the prior statute you don't need to          02:52PM

6    make any changes until certain events occur and you can stay in

7    compliance.

8    So I think even if you want to think liberally on

9    their side that there's some harm, it's kind of undercut by the

10   regulatory scheme itself.  Because they are accepting that in          02:53PM

11   certain instances it's appropriate to not -- to be below 60

12   inches and it's not a violation.  So I think that undercuts

13   this whole concept that there's some harm there in any event,

14   although I don't think there's any harm either way.

15       THE COURT:  All right.  Thank you.                                  02:53PM

16       Let me just -- well, we'll bring up the next matter.

17   I can ask it in the next matter.  So thank you, and I give you

18   leave to stay.

19       MR. VALENTE:  Thank you, Your Honor.

20       THE COURT:  The next matter is?                                     02:53PM

21       THE COURTROOM DEPUTY:  CV 16-2298, Advocates for

22   Individuals With Disabilities Foundation, Incorporated v.

23   Superstition Springs LLC, on for show cause hearing.

24       MR. POTTS:  Good afternoon, Your Honor.  David Potts

25   on behalf of defendant Superstition Springs, LLC.                      02:54PM

UNITED STATES DISTRICT COURT

─────────── September 29, 2016 - CV 16-2298 ───────────

1      MR. WILENCHIK:  Good afternoon, Your Honor.  John

2   Wilenchik, Fabian Zazueta, and Peter Strojnik on behalf of

3   Advocates for Individuals with Disabilities Foundation,

4   Incorporated.

5      THE COURT:  All right.  Mr. Wilenchik, what do you                02:54PM

6   have to say that's any different that we have already been

7   saying?

8      MR. WILENCHIK:  Your Honor, I think the analysis here

9   is the same in all respects except that here we have a

10  different entity named.  It's a corporation registered as        02:54PM

11  501(c)(3).

12     THE COURT:  So is -- yeah.  That's the whole only

13  corporation.  Mr. whatever -- I'm sorry.  I don't mean to be

14  disrespectful, but Mr. --

15     MR. WILENCHIK:  Ritzenthaler.                                    02:54PM

16     THE COURT:  Thank you, is not a shareholder.

17     MR. WILENCHIK:  Correct.  He's not a shareholder.

18     THE COURT:  And Ms. Puckett is not a shareholder.

19     MR. WILENCHIK:  Correct.  She's not a shareholder.

20     THE COURT:  All right.  So how can the corporation              02:55PM

21  assert their interests?

22     MR. WILENCHIK:  Again, we believe that a member for

23  purposes of Article III standing does not have to be a

24  shareholder or a stockholder or a member as those terms may be

25  defined under state law.  We believe that a member in the         02:55PM

1    sense --

2         THE COURT:  Again, do you have any authority for that

3    proposition?

4         MR. WILENCHIK:  The -- I believe it's the *Hunt* case,

5    actually the *Hunt* United States Supreme Court case talks about        02:55PM

6    indicia of membership, talks about how --

7         THE COURT:  Isn't an indicia membership in a

8    corporation holding stock?

9         MR. WILENCHIK:  It would be.  And the question is

10   whether --                                                             02:55PM

11        THE COURT:  Is there any other indicia of membership

12   in a corporation?

13        MR. WILENCHIK:  For purposes of Article III standing,

14   membership shall be established by participation and its

15   activities.  And in other words, it's not a required minimum          02:55PM

16   that there be ownership.  Membership purposes of article

17   standing means a person either participates or --

18        THE COURT:  Do you have -- let me be pretty clear

19   about this.  I guess I'm going to ask it in relation to the LLC

20   case beforehand, too.                                                  02:56PM

21        Do you have any case that says for purposes of an

22   organization when the organization is a corporation, that you

23   don't have to be a shareholder to assert incorporate -- to

24   assert organizational standing?

25        MR. WILENCHIK:  I can't, off the top of my head, point           02:56PM

─────── September 29, 2016 - CV 16-2298 ───────

```
 1    to a case that addresses that exact point.  I do have some
 2    cases here that describe how members need to participate in the
 3    organization's efforts.
 4            THE COURT:  Well, yeah, but that might apply to
 5    something like, I don't know.  I guess the most famous case is    02:56PM
 6    the Sierra Club, right?  The Sierra Club wasn't a corporation,
 7    was it?  It was a club.
 8            MR. WILENCHIK:  Correct.
 9            THE COURT:  So it's a little bit different when you
10    are talking about a club and when you are talking about a         02:56PM
11    corporation or an LLC, right?
12            MR. WILENCHIK:  I think --
13            THE COURT:  At least it's potentially different.  You
14    can give me whatever cases you might be able to find if you can
15    do it quickly.  But Sierra Club is a little bit different than    02:56PM
16    a corporation.
17            MR. WILENCHIK:  That's correct.  And I don't know --
18    our position is that the analysis doesn't necessarily depend
19    how it's organized under state law.  Whether it's association,
20    a partnership, or whatever it may be, the test, again, for       02:57PM
21    Article III purposes is simply whether the person participates.
22            THE COURT:  All right.  But there's no argument that
23    Mr. Ritzenthaler or Ms. Puckett, any of these are shareholders?
24            MR. WILENCHIK:  That is correct.
25            THE COURT:  And Ms. Puckett can't be a tester, right?    02:57PM
```

—————— September 29, 2016 - CV 16-2298 ——————

1          MR. WILENCHIK:  She is a tester.

2          THE COURT:  Well, she went and supposedly did her test

3     after the complaint was filed, right?

4          MR. WILENCHIK:  For this case, I believe that is

5     correct, Your Honor.                                    02:57PM

6          THE COURT:  So you are just saying your corporation

7     can file a complaint and then send out people afterwards to be

8     considered testers?

9          MR. WILENCHIK:  That is our position.  And the reason

10    is, the issue that AID files suits about is not such an issue   02:57PM

11    about personally visiting it should be required for Article III

12    standing because it's easily accomplished within minutes.  It's

13    a very imminent --

14         THE COURT:  So, in essence, and this is not Costco,

15    this is Superstition Springs, Superstition Springs files their   02:58PM

16    parking sign an inch shy or they fail to state that it's van

17    accessible, and anybody in the State of New York, Tennessee,

18    Hawaii, that can allege that they might show up in that parking

19    lot, you can bring a claim on their behalf because they don't

20    have to be a member of your corporation and they don't have to   02:58PM

21    even be there when you file the complaint.  They don't even

22    have to have visited the place?  Is that what you are arguing?

23         MR. WILENCHIK:  Absolutely not, Your Honor.  But thank

24    you for raising it.

25         THE COURT:  So where is the line?                   02:58PM

UNITED STATES DISTRICT COURT

―――――― September 29, 2016 - CV 16-2298 ――――――

1          MR. WILENCHIK:  The line is there has to be a real

2   imminent harm.  And I believe Your Honor --

3          THE COURT:  So is there a real imminent harm when

4   somebody from downtown Phoenix goes clear out in far east Mesa,

5   is that a place where Ms. Puckett often shops?                        02:59PM

6          MR. WILENCHIK:  Whether or not she shops there,

7   whether or not she intends to test there.

8          THE COURT:  It all has to do with whether there's a

9   real imminent harm, doesn't it?

10          MR. WILENCHIK:  Correct.  And being a tester intending    02:59PM

11   to go there solely for purposes of a lawsuit is acceptable

12   under the ADA.

13          THE COURT:  If you are a tester from New York or a

14   tester from New England, perfectly acceptable?

15          MR. WILENCHIK:  No, because they need to have, as Your    02:59PM

16   Honor says, a real imminent harm.  They need to be somewhere in

17   the area.  And this goes to the analysis applied in the *Houston*

18   case, whether it's Tenth or Eleventh Circuit I forget, which is

19   there was a tester who the Court said, look, this is not like

20   *Lujan*, this is not somebody who intends to go war touring a    02:59PM

21   country half way across the world.  This is a somebody who

22   lives in an adjacent county, regularly travels in the area.

23   For purposes of these kind of cases it's simply too much of a

24   barrier to require that a person --

25          THE COURT:  Yeah, but that wasn't a tester in an ADA      02:59PM

——————————— September 29, 2016 - CV 16-2298 ———————————

1    case, right?

2            MR. WILENCHIK:  That was a tester.

3            THE COURT:  That was a tester who actually had

4    fraudulent things said to them when they came and applied.

5            MR. WILENCHIK:  Are you referring *Lujan* or *Houston*?          03:00PM

6            THE COURT:  I think it was *Houston.*  I can't represent

7    to you, Mr. Wilenchik, but I really remember.  I wasn't paying

8    too close attention to the name of the case.

9            MR. WILENCHIK:  *Houston* is an ADA testing case.

10           THE COURT:  Okay.  It must have been *Lujan* then.          03:00PM

11           MR. WILENCHIK:  *Lujan* is not an ADA case.

12           THE COURT:  Okay.

13           MR. WILENCHIK:  To answer the Court's question, that,

14   to us, is the -- how do I put it -- the parameters.  You do

15   have to have a person in the case of a parking tester who          03:00PM

16   regularly travels in the area, who lives somewhere in the area.

17   Because, again, it's just an issue of driving through and

18   looking for a spot.  It's something I could do in any parking

19   lot right now in the Phoenix/Mesa area within 20, 40 minutes.

20           THE COURT:  What about if you live in Wickenburg?  Is          03:00PM

21   that --

22           MR. WILENCHIK:  That's where the line may have to be

23   drawn is where you live more than one county away.

24           THE COURT:  Wickenburg is in Maricopa County.

25           MR. WILENCHIK:  Okay.          03:01PM

─────── September 29, 2016 - CV 16-2298 ───────

1           THE COURT:  What about Kingman?

2           MR. WILENCHIK:  Kingman may be in Coconino.  It's a

3      few counties away.

4           THE COURT:  Mohave County.

5           MR. WILENCHIK:  In *Houston* it was enough to say it was      03:01PM

6      the adjacent county and he regularly travels through the area.

7           THE COURT:  Counties are a lot smaller in Texas,

8      aren't they?

9           MR. WILENCHIK:  I think it was in Florida.  I believe

10     Houston was in Florida.                                            03:01PM

11          THE COURT:  Whatever.  Most places back east counties

12     are a lot smaller, right?

13          MR. WILENCHIK:  They may be.  The bottom line is it

14     was an area that Houston traveled to regularly.  A tester like

15     Shannon Puckett travels regularly through the Mesa/Phoenix        03:01PM

16     metropolitan area.  And that should be sufficient to confer

17     Article III standing.

18          THE COURT:  Have you filed a motion to dismiss your

19     federal claim in this case?

20          MR. WILENCHIK:  No.                                          03:01PM

21          THE COURT:  Anything else?

22          MR. WILENCHIK:  Just one moment.

23          The only other thing to point is the distinction in

24     this case.  The issue here was not how tall the sign is.  It

25     was a lack of a van accessible sign.                              03:02PM

September 29, 2016 - CV 16-2298

1      THE COURT:  It was van accessible.  But if it is van

2   accessible, doesn't Mr. Potts have an argument that whether or

3   not it says "van accessible" seems to be -- what's your damage

4   on that?

5      MR. WILENCHIK:  The damage pursuant to Ninth Circuit      03:02PM

6   law is that -- well, first of all, just as a practical matter,

7   it's harder to identify it if it doesn't have a sign.  Can't

8   necessarily see, and that's the whole point to a sign.  There's

9   a harm there.  There's a reason for the requirement.  And

10   whether it's the -- one among the Ninth Circuit cases that have  03:02PM

11   been quoted in our briefs does state the ADA's requirements are

12   very strict and it talks about a matter of inches.  If

13   something is out of compliance a matter of inches, that is a

14   harm.  May have been in the *Pickern* case.  You know, here, lack

15   of a sign is a harm.  There's a reason it's in the ADA.  If    03:03PM

16   here merely having a space --

17      THE COURT:  Well, the sign is there, right?  It's just

18   the language, van accessible.

19      MR. WILENCHIK:  Right.  When I say that usually

20   there's two -- often times there's two separate signs.  There's  03:03PM

21   a van accessible sign right below it.  There's no van

22   accessible language or van accessible sign, would be the way I

23   would phrase it.

24      THE COURT:  Okay.

25      MR. WILENCHIK:  Nothing further on this one, Your        03:03PM

1    Honor.

2         THE COURT:  Thanks.

3         Mr. Potts.

4         MR. POTTS:  Thank you, Your Honor.  Just a couple

5    brief points.                                              03:03PM

6         THE COURT:  Again, Mr. Potts, you are a tall man.

7    Either approach the podium or bring that microphone up to you.

8         MR. POTTS:  I'm going to approach the podium, Your

9    Honor.

10        THE COURT:  Okay.                                     03:03PM

11        MR. POTTS:  Thank you.  First, there is an irony in

12   what Mr. Wilenchik said.  It takes minutes to determine whether

13   one of these parking lots is compliant and yet despite the fact

14   that it takes such little time, they didn't even send any

15   actual member or purported member of the organization out     03:03PM

16   there.  Instead, they attempt to scale these claims where you

17   can send out all these individual inspectors and not have any

18   individual person go visit.

19        Second quick point is there's an allegation

20   unsupported by any declaration but just made in the reply that  03:04PM

21   since that time she's been to this property.  There's a

22   question there as to whether or not she even qualifies as a

23   tester because if she simply showed up without her daughter, I

24   don't know if she's disabled under the statute, whether that's

25   enough to even encounter the barrier.  And I guess --          03:04PM

30

1      THE COURT:  I get your point.  Is there any issue,

2  though, like there was with Mr. Valente that he since repaired

3  the issue, so by the time she showed up the issue may have been

4  repaired.  Is there any issue like that with you?

5      MR. POTTS:  No, there is not, Your Honor.  I believe        03:04PM

6  our property manager is still in the process of making sure the

7  property is compliant.  I think we have some disputes as to

8  whether or not that's the case.  I can't sit up here and tell

9  you whether the property --

10      THE COURT:  Okay.  I appreciate it.        03:04PM

11      MR. POTTS:  The final thing is the, *Houston,* or

12  *Houston* case, whatever it is, from the Eleventh Circuit that

13  the plaintiffs cite actually cuts against them.  That's a case

14  that specifically was an appeal in the Eleventh Circuit from a

15  Florida District Court case.  It talked about the exact same        03:05PM

16  test that's laid out in *Harris*, which is the Southern District

17  of California case we cite.  It says, if you are going to

18  determine whether someone actually returns matters how close it

19  is to the residence, their past patronage to the business,

20  definiteness of their plans to return, and frequency of their        03:05PM

21  travel in the business.  Also in that case they did require he

22  had actually gone there in the first place.

23      In that case, the plaintiff visited a supermarket that

24  was two miles from his attorney's office, so though it was 30

25  miles from his house, he had a reason to be going there.  We        03:05PM

UNITED STATES DISTRICT COURT

1    don't have that here.  We simply have Ms. Puckett saying I have

2    this vague intent to return, but she doesn't give any reason

3    why she would go to a Papa John's 20 miles from her house.  It

4    doesn't make sense.

5         And without making any effort to satisfy those four          03:05PM

6    elements I just discussed, they can't show this intent to

7    return is necessary to confer Article III standing.

8         THE COURT:  What about is Mr. Wilenchik correct that

9    organizations that are corporations can assert the interests of

10   people they claim to be their members but who are not             03:06PM

11   shareholders?

12        MR. POTTS:  I have not researched that issue.  I

13   believe that Golden Rule has done a great job briefing the

14   member issue, the case after us.  But I haven't done enough on

15   that so frankly, I'm not prepared to make that argument today     03:06PM

16   that for that reason they don't have standing.

17        That's all I have unless you have any questions.

18        THE COURT:  Nope.  Thank you.

19        MR. POTTS:  Thank you.

20        THE COURT:  Is Golden Rule here?                              03:06PM

21        MR. HAAR:  Yes.

22        THE COURT:  Are you ready to proceed?

23        MR. HAAR:  Yes, Your Honor.

24        THE COURT:  All right.

25        MR. POTTS:  Oh, Your Honor, and I would request the          03:06PM

——————— September 29, 2016 - CV 16-2298 ———————

1    same leave.

2            THE COURT:  You have the same leave.

3            THE COURTROOM DEPUTY:  This is CV 16-2413, Advocates

4    for Individuals with Disabilities Foundation, Incorporated, v.

5    Golden Rule Properties, LLC, on for show cause hearing.          03:07PM

6            MR. WILENCHIK:  This is John Wilenchik, Fabian

7    Zazueta, and Peter Strojnik on behalf of plaintiff Advocates

8    for Individuals with Disabilities Foundation, Incorporated.

9            MR. HAAR:  Aaron Haar on behalf of Golden Rule

10   Properties, LLC, in this matter.                                 03:07PM

11           THE COURT:  Thank you.  Mr. Wilenchik.

12           MR. WILENCHIK:  Your Honor, I suppose can incorporate

13   by record the discussions we have had in the previous two

14   matters.  Is that acceptable?

15           THE COURT:  Sure.  Unless you have any -- do you have   03:07PM

16   any objection, Mr. Haar?  I noticed you were here through them

17   all.

18           MR. HAAR:  No objection, Your Honor.

19           THE COURT:  All right.

20           MR. WILENCHIK:  And here again, I think it is fairly    03:07PM

21   comparable to the last case that we have addressed.  Again, the

22   issue is lack of a van accessible sign.  And, you know,

23   somewhat as a reply to the argument that was just made about

24   *Houston*, in *Houston*, the Court in *Houston* did not specifically

25   require that the plaintiff have visited.  I do think there's    03:07PM

September 29, 2016 - CV 16-2298

1    emphasis in the language there under the mere facts that the

2    plaintiff traveled to the area and had an intent to go.

3         You know, the issue we have here is I don't know

4    there's a case that specifically says in this arena of ADA

5    cases that you don't -- in which the plaintiff had not already

6    been.  There is actually an order of this Court which was cited

7    in the briefs concerning Theresa Brooke where she had not

8    visited a particular hotel.  You know, she had been informed of

9    an issue at a hotel, and, you know, indicated intent to go

10   there.

11        We believe this is comparable to that.  There is no

12   hard and fast requirement on Article III that the person have

13   actually suffered the harm, particularly in the case of these

14   kind of ADA cases where a lot of the statutory language and a

15   lot of case law indicates that there should be no need for a

16   futile act.  Again, it's the point that was raised previously,

17   well, it could just be done in a few minutes.  Why not do it?

18        THE COURT:  I mean, a futile act, come on.  Wouldn't

19   that let anybody bring a claim?

20        MR. WILENCHIK:  Anyone who is a disabled person who

21   lives in the area, who regularly visits the area, and may have

22   to stop there and park, whether it's because they are in an

23   emergency, they have to run in.

24        THE COURT:  There may be places very close to my own

25   house that I never go.  If I was disabled, could I bring a

03:08PM
03:08PM
03:08PM
03:09PM
03:09PM

UNITED STATES DISTRICT COURT

34

1    claim against them if I have never been there?

2          MR. WILENCHIK:  If you can say even as a tester that

3    you intend to go there, the answer is yes.

4          THE COURT:  Okay.  You haven't addressed the whole

5    second part.                                                    03:09PM

6          MR. WILENCHIK:  Oh, yes.  Thank you, Your Honor.

7          THE COURT:  Why shouldn't I sanction Mr. Strojnik

8    here?  Under -- and I'm talking -- there's a couple different

9    things here, because we have a pending motion to dismiss.  So

10   why can't I grant fees under 41(a)(2), why can't I grant fees  03:09PM

11   under 1447, and why can't I grant fees, particularly and

12   individually, against Mr. Strojnik on 28 USC Section 1927?  I

13   have read *Baddie*, I know *Baddie*.  But you know well -- and I

14   don't have to -- what's the name of the case.  *Sun West Dental*,

15   has already been argued, is on the very same facts, so it's not 03:10PM

16   against the very same defendant but it's against the very same

17   law firm.  And they engaged in the same sort of discussion with

18   Mr. Strojnik well before the necessity to remove this case ever

19   came about.

20          And when you have, as you do, 160 cases like this that   03:10PM

21   your client has filed in this Court and well over 1,000 in

22   state court, and we have a record that has already been created

23   by Judge Tuchi that is not different from that here, why can't

24   I, and why shouldn't I, sanction your client for multiplying

25   proceedings?  And why isn't it distinguishable from *Baddie* from 03:10PM

1    which you don't have any similar facts?

2         MR. WILENCHIK:  First of all, Your Honor, I believe

3    the fact in *Baddie* are totally similar --

4         THE COURT:  Well, there was no discussion.

5         MR. WILENCHIK:  Correct.                          03:11PM

6         THE COURT:  There was no communication back and forth

7    as why are you going to make us do this, and do you intend to

8    pursue your claims and all of that.  There wasn't any of that

9    in *Baddie*.

10        MR. WILENCHIK:  Correct.  And that's exactly what I   03:11PM

11   was going to say.  Up until that point, you have got the same

12   facts.  With that addition here, defense counsel did

13   specifically say beforehand, let's not go through the process.

14        THE COURT:  Sure does look like your client is trying

15   to make it as expensive as he can for all of the defendants  03:11PM

16   against whom he is asserting these claims on a blanket basis.

17        MR. WILENCHIK:  The issue we have here is that the

18   real reason why this happened is, I mean, *Baddie* provides for

19   it.  The rules provide for it.  It's almost an issue of, I

20   think, them not wanting to, when defense counsel says do this  03:11PM

21   or else, not wanting to do this.  They felt like they had a

22   right to just rely on an actual filing of the Notice of

23   Removal.

24        THE COURT:  As soon as they got a Notice of Removal

25   they moved to dismiss.                                  03:12PM

1     MR. WILENCHIK:  Correct.  Again, that's the process

2  that *Baddie* provides for.

3     THE COURT:  That's the process that *Baddie* provides

4  for, and I don't mean to take away from you a case that I think

5  you are arguing in good faith.  But the facts are very                03:12PM

6  distinguishable, are they not?

7     MR. WILENCHIK:  At this time, the only distinguishing

8  point is what Your Honor has raised and what I have already

9  stated.  Prior to that, we have defense counsel saying we want

10  you to drop your claims first.                                        03:12PM

11     THE COURT:  Do you have any evidence you want to

12  present on this issue?

13     MR. WILENCHIK:  If it would be helpful to Your Honor's

14  consideration, I would call the lawyers here since sanctions

15  against him personally have been proposed.                           03:12PM

16     I would call Peter Strojnik.

17     THE COURT:  All right.  Mr. Strojnik, please come

18  forward.

19     THE COURTROOM DEPUTY:  Could you spell your name?

20     THE WITNESS:  First name Peter, last name Strojnik,              03:13PM

21  S-T-R-O-J-N-I-K.

22     (The witness was sworn.)

23     THE COURT:  Not there, Mr. Strojnik.  It's over here.

24     THE WITNESS:  Shows how long it's been since I tried a

25  case over here.                                                      03:13PM

1                        PETER STROJNIK,

2    a witness herein, having been first duly sworn by the clerk to

3    speak the truth and nothing but the truth, was examined and

4    testified as follows:

5                        DIRECT EXAMINATION

6    BY MR. WILENCHIK:

7    Q.  Hello, Mr. Strojnik.

8         Are you the counsel for the plaintiff in this matter?

9    A.  Yes, I am.

10   Q.  Can you explain to the Court why -- well, let me back up.      03:14PM

11        I think we all know what the issue is but let me

12   approach it properly.

13        Are you aware of an offer by defense counsel to

14   stipulate to the dismissal of federal claims in this matter

15   prior to defense counsel filing a Notice of Removal?            03:14PM

16   A.  I don't recall that, but I assume it's true.

17   Q.  Have you encountered that situation before in cases that

18   you have filed for this plaintiff?

19   A.  Most of the time, defendant is simply removed without

20   discussion.  I may have received others.  I don't recall.       03:14PM

21   Q.  Does -- do you have any policy or intent to cause the

22   defendant here, or did you, have you ever had -- let me

23   rephrase.

24        Have you ever had any intent to cause additional

25   expenses or harm to the defendant in this case?                 03:15PM

1   A.  Absolutely not.  It is my intent to make every litigation

2   as inexpensive as possible.  It is not my intent to cause any

3   unnecessary fees to anyone, particularly a defendant in an ADA

4   case.  My intent in an ADA case is for a defendant to correct

5   whatever violations that there might exist on his property and          03:15PM

6   be done with the case.  That's my intent.

7   Q.  You said you don't have recollection of this particular

8   case, correct?

9   A.  I know there was one, and I believe this is the one, where

10  an offer was made to dismiss the federal claim in the state             03:15PM

11  court, and if I don't, then the threat was then we'll go and

12  move it to federal court and then the federal court is going to

13  dismiss it.

14          Now, this is an interesting situation because, as you

15  know, and as you have discussed during the past half an hour or         03:16PM

16  so, standing is a jurisdictional issue that is not associated

17  with a cause of action at all.  It is not a question of what

18  the cause of action is.  In other words, standing does not

19  relate to causes of action, it relates to the power of the

20  court to decide a cause of action.  So if I were to simply              03:16PM

21  agree to dismiss, with prejudice, a claim that I am obligated

22  to make, I believe that would be a disservice to my client, and

23  my belief is that it would be inappropriate.

24  Q.  If the Court were to sanction you here personally and your

25  client today for not stipulating to dismiss claims prior to             03:17PM

1    removal, what effect do you believe that would have on future

2    litigation?

3    A.  Well, that will have an extraordinarily chilling effect on

4    everything I do from now on.  I do want to note that in --          03:17PM

5    there's already been a case that this Court had decided.  We

6    received very good guidance on how to handle these types of

7    cases.  We followed that guidance.  It is my hope that we

8    receive further guidance from this Court on how to handle these

9    cases.

10           But I think it would have an extraordinarily chilling      03:17PM

11   effect on ADA compliance, on ADA litigation and ADA

12   enforcement.  And it's, perhaps, just, you know, one brick in

13   the wall of all the chilling effects that occur in this kind of

14   a case, you know, the death threats, the gun violence threats,

15   the phone calls.  All of those things add up in a lawyer's mind    03:18PM

16   and ultimately it gets to the cup being full.  It spills over

17   and the lawyer says, okay, I'm not doing this anymore.  So

18   that's the danger I see.

19   Q.  Okay.  My final question would be:  Are you aware that AID

20   did anything to avoid the removal process --                       03:18PM

21   A.  Will you repeat that please?

22   Q.  Are you aware in this case that AID made an offer or did

23   anything to avoid the removal remand process?

24   A.  I believe we discussed the fact that in this case, an offer

25   was made to simply dismiss the federal case in the state court     03:18PM

September 29, 2016 - CV 16-2298 - Strojnik - Direct

1    which, in my opinion, would have been inappropriate.  But if

2    the we didn't do that, that in that case, the defendants would

3    remove the case to federal court, which they did, and then seek

4    a dismissal on the basis of standing which is, as had been

5    discussed in this case, is much more stringent in the federal      03:19PM

6    law than the state law.  Actually, the state law does not have

7    a standing requirement at all.  The state law, as I understand

8    it, any person may file for violation.

9    Q.  Why did AID file federal claims in state court?

10   A.  Because I have, as a lawyer, I have an affirmative            03:19PM

11   obligation to file all potential and good faith claims that I

12   have, and I believed that was a potential good faith claim.

13   Q.  And your personal knowledge of why AID did not stipulate to

14   drop the federal claims before removal?

15   A.  Well, the reason for that, as I discussed before, was there   03:19PM

16   are two different standards of standing, or jurisdiction, or

17   real party in interest, as we call it in the state court.  And

18   if I -- if my client agreed to dismiss in the state court he

19   would never be able to reassert that claim no matter what the

20   changed circumstances might be.  And if I had not brought the     03:20PM

21   claim, I would be violating my duty as a lawyer.  I would be

22   committing malpractice.  So obviously, I had to file that.

23          MR. WILENCHIK:  Does Your Honor have questions?

24          THE COURT:  Are you going to call Mr. Zazueta?

25          MR. WILENCHIK:  Yes.                                       03:20PM

1          THE COURT:  Is he here?

2          MR. WILENCHIK:  Yes.

3          THE COURT:  Do you intend to call him?

4          MR. WILENCHIK:  I do.

5          THE COURT:  I don't have any questions.                03:20PM

6          Do you have any questions?

7          MR. HAAR:  Just a couple, if I may, Your Honor.

8          THE COURT:  All right.

9                    CROSS-EXAMINATION

10   BY MR. HAAR:

11   Q.  Mr. Strojnik, do you know how many cases AID has had

12   against my firm?

13   A.  I have no idea against your firm.

14   Q.  Can you estimate would it be more than 10, do you think?

15   A.  Who is your firm again?                                  03:21PM

16   Q.  Jaburg & Wilk.

17   A.  Maybe 10, maybe more.  I don't know.

18   Q.  Would you estimate it's more than 20?

19   A.  I'm not going to estimate.

20   Q.  More than 30?                                            03:21PM

21   A.  I said I'm not going to estimate.

22   Q.  Are you aware of any cases where AID has paid defendants

23   for the cost of removal?

24   A.  Where AID has paid the defendants for the cost of removal?

25   No.  At the time of the removal the defendant pays the fee.   03:21PM

September 29, 2016 - CV 16-2298 - Strojnik - Cross

1    That's my understanding.

2    Q.  I'm sorry.  Let me clarify that.  Are you aware of any

3    prior cases where AID has agreed to reimburse defendants for

4    the cost of removal when AID immediately dismissed the federal

5    claim?                                                        03:21PM

6    A.  I don't recall.  It could have happened.  I don't recall.

7    Q.  Does your firm have a standing policy that you intend to

8    litigate only in state court?

9    A.  My firm has no policy.  My client's decision was to file in

10   state court.                                                  03:22PM

11   Q.  Your client has a policy to litigate only in state court?

12   A.  My client made a decision to file in state court because

13   the state court fees are less than the federal fees, and

14   because under the state court standing issue, any person may

15   file for a violation of the Arizona With Disabilities Act.     03:22PM

16         And I was listening earlier to the analogy of a guy

17   from New York filing a lawsuit.  Yes, a guy from New York can

18   file a lawsuit in Arizona under the statute, under the

19   Arizonians with Disabilities Act but not under the federal ADA.

20   Q.  So has that always been the AID's policy to litigate in    03:22PM

21   state court only?

22   A.  I don't know.  Have they filed in a different court that

23   you are aware of?  Perhaps you can enlighten me.

24   Q.  Okay.  Between the week when the representation was made to

25   Golden Rule Properties and a week later when dismissal was     03:23PM

1   sought, can you tell me what changed in that period of time to

2   provoke dismissal of the federal claim?

3   A.  I don't remember.  I don't know why you moved to dismiss.

4   I assume it's on standing.

5            MR. HAAR:  No further questions, Your Honor.          03:23PM

6            THE COURT:  Thank you.  You may redirect.

7            MR. WILENCHIK:  No, Your Honor.

8            THE COURT:  All right.  You may step down, Mr.

9   Strojnik.

10            THE WITNESS:  Thank you, sir.                        03:23PM

11            MR. WILENCHIK:  I will call Fabian Zazueta.

12                       FABIAN ZAZUETA,

13   a witness herein, having been first duly sworn by the clerk to

14   speak the truth and nothing but the truth, was examined and

15   testified as follows:

16                     DIRECT EXAMINATION

17   BY MR. WILENCHIK:

18   Q.  Fabian, what is your position with the plaintiff here?

19   A.  I'm the in-house counsel for Advocates for Individuals with

20   Disabilities.                                                03:24PM

21   Q.  And are you familiar with this particular case?

22   A.  I am.

23   Q.  Do you recall that an offer was made by defense counsel in

24   this case to stipulate to dismiss federal claims prior to

25   removal?                                                     03:24PM

```
 1    A.  I am.

 2    Q.  Can you explain to the Court why the decision was made or

 3    why your client did not enter into that stipulation?

 4    A.  So just like Mr. Strojnik said, at the time of that offer

 5    was made, I advised my client that this is a position where we    03:24PM

 6    can dismiss those federal claims but then I would be

 7    essentially in a position where I'm committing some sort of

 8    malpractice by not pursuing the federal cause of action.  So we

 9    decided not to stipulate to dismiss.

10    Q.  Do you believe that was proper under the rules?                03:25PM

11    A.  I think it's proper, yes.

12    Q.  And is that what your client wanted to do?

13    A.  That's correct.

14    Q.  Does AID have a policy of filing federal claims in state

15    court?                                                             03:25PM

16    A.  It's just what the attorneys have advised the client, and

17    this is what -- there are two causes of action that arise under

18    the same transaction or occurrence, and we just file those in

19    state court for reasons, economic reasons, for the filing fees

20    in state court are a lot cheaper.  But to answer your question,   03:25PM

21    we file in state court for particular reasons.  There's no

22    exact policy.

23    Q.  And that would be in my follow-up question, just the reason

24    why.

25    A.  Right.  Correct.                                              03:25PM
```

1   Q.  So I believe you stated the reason why, it is cheaper to

2   file in state court?

3   A.  Correct, and also the standing issues raised by Mr.

4   Strojnik and this Court.

5   Q.  Can you explain why AID, after the removal, moved to          03:26PM

6   remand?

7   A.  We just intended to pursue our claims in state court and we

8   did that because of the case law suggests that we can and

9   because we decided to litigate in state court, again, because

10  of the reasons of standing and efficiencies in state court.     03:26PM

11  Q.  Was there any intent here to cause additional cost to be

12  incurred by the defendant?

13  A.  No.

14  Q.  Going forward, has AID -- does AID intend to move for

15  remand in federal cases that are currently pending with the     03:26PM

16  court?

17  A.  Moving forward we're going to stay in federal court just to

18  avoid the issue at hand.

19  Q.  Do you believe there's any bad faith by yourself personally

20  or by Mr. Strojnik in not entering into a pre-removal            03:27PM

21  stipulation to dismiss federal claims?

22  A.  I don't think there's bad faith.

23  Q.  What effect, if the Court were to sanction you and Mr.

24  Strojnik and or AID today, what effect would that have on

25  future litigation?                                              03:27PM

September 29, 2016 - CV 16-2298 - Zazueta - Direct

1    A.  I think it would allow me to not properly advise my client

2    whether or not we should do such things such as filing to

3    dismiss federal claims, because there's a possibility of

4    sanctions to its attorneys and clients as well.  So if we were

5    to get sanctioned today, I risk improperly advising my client          03:27PM

6    as to what's the best interest -- what's in the best interests

7    for the organization.

8    Q.  And we discussed again the going forward AID does not

9    intend to -- will not be filing to remand its cases currently

10   pending in federal court?                                              03:28PM

11   A.  That's correct.

12              MR. WILENCHIK:  Does Your Honor have questions?

13              THE COURT:  I do have a few questions.

14                            EXAMINATION

15   BY THE COURT:

16   Q.  Mr. Zazueta, I'm going to be handing you what is Document

17   10 on the docket in this case number, which is case Number?

18   2:16-CV-04213.  There is Exhibit A and Exhibit B attached to

19   this document.  I'm going to ask you to look at Exhibit A and

20   then Exhibit B, please.                                                03:28PM

21   A.  Thank you, Your Honor.

22   Q.  Did you receive Exhibit A?

23   A.  I did.

24   Q.  Is Exhibit A an accurate and exact copy of what you

25   received from Mr. Anderson, or Mr. Haar?                              03:29PM

September 29, 2016 - CV 16-2298 - Zazueta - By The Court

1    A.  I believe so.

2    Q.  And then Exhibit B is an e-mail chain that, at least in my

3    interpretation, seems to be an e-mail chain that follows your

4    receipt of Exhibit A, or at least it purports to be that.  Is

5    that what it is?                                            03:29PM

6    A.  It appears that the e-mail discussion happened after

7    receiving a letter.  That's correct.

8    Q.  And it appears that e-mail discussion was between you, Mr.

9    Haar, and Mr. Anderson, is that correct?

10   A.  That's correct.                                         03:29PM

11   Q.  Is it an accurate statement?  Is it an accurate rendition

12   of your e-mailed discussions with Mr. Haar and Mr. Anderson?

13   A.  That's correct, yes.

14   Q.  You indicated in your testimony that you filed in state

15   court and that it was your desire to remain in state court    03:30PM

16   because that's what your client wanted to do.  Is that correct?

17   A.  After consulting with my client and outside counsel, that

18   is what I was advised to do.

19   Q.  Who was the representative of your client that you

20   consulted with and gave you those instructions?             03:30PM

21   A.  I discussed with, at the time, it was Mr. Strojnik and the

22   client, AID Foundation.

23   Q.  I'm sorry?

24   A.  The client, AID Foundation.

25   Q.  Well, AID Foundation is not a person.  Is it Mr. Strojnik  03:30PM

1    who gave you the directions on behalf of your client?

2    A.  This is a discussion I had with Mr. Strojnik, so yes.

3    Q.  Is Mr. Strojnik the representative of your client?

4    A.  He is the outside counsel.

5    Q.  Is he the person who gives you directions from your client?    03:30PM

6    A.  He gives us his legal advice and then I determine whether

7    or not --

8    Q.  I'm just asking who you received your directions from, from

9    your client.

10   A.  I have complete autonomy at the AID Foundation but I    03:30PM

11   receive advice from outside counsel.

12   Q.  So when you say that's what your client wanted to do, what

13   you are saying is that's what you wanted to do?

14   A.  I fully advised my client on what's in their best interest

15   after receiving advice from outside counsel.    03:31PM

16   Q.  You are your client?

17   A.  At the time what the client wanted, Peter Strojnik and AID

18   Foundation and the owners of that company.

19   Q.  Who is the representative of the client who gives you

20   your -- who gives you direction, or do you make your own    03:31PM

21   decisions on behalf of the client?

22   A.  The clients are -- so if I understand the Court's question,

23   who are the supervisors of --

24   Q.  Who are the decision makers in Advocates For Individuals

25   with Disabilities Foundation, Incorporated?    03:31PM

1   A.  The in-house counsel department.

2   Q.  And that is who?

3   A.  That consists of -- then consisted of myself, but now

4   that's changed since then.  And we follow the advice of our

5   outside counsel and then we also have our department          03:31PM

6   supervisors.

7   Q.  At the time you declined to dismiss your federal claims and

8   you represented that you were going to pursue them even after

9   having represented that you were going to dismiss them prior,

10  did you make that decision on behalf of your client?          03:32PM

11  A.  That was an informed decision from outside counsel and then

12  discussing that with several department managers from the

13  foundation.

14  Q.  But were you the one who made the decision on behalf of

15  your client?                                                  03:32PM

16  A.  I fully advised them after --

17  Q.  When you say you fully advised them, who did you fully

18  advise?

19  A.  I discussed with the department leaders or department

20  managers from the AID Foundation.                             03:32PM

21  Q.  Who are the individuals that you advised?

22  A.  There's an individual named Alex Callen.  There's an

23  individual named -- at the time it was Alex Callen and Mr.

24  Strojnik.

25  Q.  Alex Callen and Mr. Strojnik?                             03:32PM

UNITED STATES DISTRICT COURT

——— September 29, 2016 - CV 16-2298 - Zazueta - By The Court ———

 1  A.  Yes.

 2  Q.  Is Alex Callen a shareholder of Advocates for Individuals

 3  with Disabilities Foundation, Incorporated?

 4  A.  Not to my knowledge.

 5  Q.  Is he an officer or a director of Advocates For Individuals          03:32PM

 6  with Disabilities Foundation, Incorporated?

 7  A.  Not to my knowledge.

 8  Q.  Is Mr. Strojnik a shareholder of Advocates for Individuals

 9  With Disabilities Foundation, Incorporated?

10  A.  Not to my knowledge.  He is just outside counsel.                    03:33PM

11  Q.  Who is the shareholder?

12  A.  I don't have information, knowledge of that information.

13  Q.  But you received the directions from your client on

14  behalf -- the directions that your client gave you came either

15  from yourself, from Mr. Callen, or Mr. Strojnik?                         03:33PM

16  A.  Yes.

17  Q.  Who indicated to you that you should not dismiss your

18  federal claim but should oblige -- well, who indicated to you

19  that you should not dismiss your federal claim?

20  A.  We discussed, Mr. Strojnik, Alex Callen and myself,                  03:33PM

21  determined it was not in the company's best interest to --

22  Q.  So the three of you made that decision?

23  A.  If I remember correctly, yes.

24  Q.  And who made the decision that you would move to dismiss

25  your federal claim?                                                      03:33PM

51

1    A.  I think from, judging from the e-mail, I mean, I'm assuming

2    it's probably all three of us, just because --

3              THE COURT:  Thank you, sir.

4              THE WITNESS:  Yep.

5              THE COURT:  Any questions?                    03:34PM

6              MR. HAAR:  No questions, Your Honor.

7              THE COURT:  Any redirect?

8              MR. WILENCHIK:  Very quickly, Your Honor.

9                        REDIRECT EXAMINATION

10   BY MR. WILENCHIK:                                       03:34PM

11   Q.  Alex Callen, would you consider Alex Callen to be a client

12   representative?

13   A.  Yes.

14   Q.  What is his title?

15   A.  He is -- he heads our case management but he does -- he's a   03:34PM

16   man of many hats; legal assistant, he kind of facilitates

17   between departments.  He's one of the managements there.

18   Q.  Mr. Callen is not a lawyer, correct?

19   A.  No.

20   Q.  But do you view Mr. Callen as having decision making          03:34PM

21   authority on behalf of AID?

22   A.  To a certain extent.

23   Q.  And again, his decision, as we discussed here today, was

24   made with Mr. Callen and with his consent and direction?

25   A.  Yes.                                                          03:35PM

1          MR. WILENCHIK:  No further questions, Your Honor.

2          THE COURT:  You may step down.

3          Have you got anything more you want to say?

4          MR. WILENCHIK:  Your Honor, the only other thing I

5    want to point out on this particular issue is that we believe          03:35PM

6    that the inherent power of the Court should be exercised

7    fairly.  And whether it's a less drastic alternative, that's

8    proper.  Here the less drastic alternative to what we have

9    discussed is just to retain jurisdiction of the case.  And, you

10   know, currently there is no pending motion to remand that was          03:35PM

11   denied by the Court.  I don't know that there's any intent to

12   file one.

13         THE COURT:  In order to retain jurisdiction of the

14   case, you would suggest that I do that even if it amounts to

15   dismissal of the charges?          03:35PM

16         MR. WILENCHIK:  I think what the Court can do is

17   retain jurisdiction, make a ruling on the pending order to show

18   cause, if the Court were to rule that there's no subject matter

19   jurisdiction.  It is obligated under the authorities I have

20   cited and I'd certainly be happy to submit a brief on it, to          03:36PM

21   remand the case to state court.

22         THE COURT:  I'm not at all obligated to do that.  As

23   Mr. Valente says, I can dismiss the case outright, can't I?

24         MR. WILENCHIK:  Only if remand to the state court

25   would be futile.  And here, given there is a different standing          03:36PM

```
 1    there --
 2              THE COURT:  Not only if it would be futile.  I have
 3    the authority to interpret state law.  I do it all the time.
 4              MR. WILENCHIK:  But where the decision is that there
 5    is a lack of subject matter jurisdiction.                         03:36PM
 6              THE COURT:  You are asking me to retain jurisdiction
 7    of the case but to remand?
 8              MR. WILENCHIK:  Correct, retain jurisdiction, in other
 9    words, not grant the remand they have requested.
10              THE COURT:  Not grant the remand they have requested   03:36PM
11    but grant a remand that I would impose.
12              MR. WILENCHIK:  To dismiss the case and then remand
13    for subject matter determination in an Arizona court.
14              THE COURT:  So I would dismiss the federal case.  If I
15    dismissed the federal case, the only thing left to remand is     03:36PM
16    the state case, isn't it?
17              MR. WILENCHIK:  No.  And, by the way, Your Honor,
18    there was an order today by Judge Campbell doing this exact
19    thing.
20              THE COURT:  I have read Judge Campbell's order.  I      03:37PM
21    know what Judge Campbell's done.  I respect Judge Campbell, but
22    Judge Campbell didn't have a motion to dismiss in front of him.
23              MR. WILENCHIK:  There is currently no motion to
24    dismiss.  That was denied by this Court.
25              THE COURT:  What?                                      03:37PM
```

1      MR. WILENCHIK:  The motion was denied by this Court

2  already.  All that's pending now is this order to show cause

3  proceeding.

4      THE COURT:  I will have to look at that.  You may be

5  right.  Thank you.                                          03:37PM

6      MR. WILENCHIK:  Thank you, Your Honor.

7      THE COURT:  Do you have anything you wish to say, Mr.

8  Haar?

9      MR. HAAR:  Just real quick, Your Honor.  I don't want

10  to waste your time any more than it already has been.  I just  03:37PM

11  want to reiterate what prior defense counsel has said.  We

12  believe you do have authority to dismiss both claims.  I think

13  for purposes of judicial efficiency, they fail to state -- I'm

14  sorry -- they fail, even under state standing, because

15  prudential standing doesn't apply under these facts as pled.   03:38PM

16      THE COURT:  Do you have authority from the state court

17  that suggests that standing doesn't extend to the degree -- I

18  mean, it may well not extend.  I'm not saying it does, but do

19  you have any authority from the state court that suggests that

20  it doesn't?                                                  03:38PM

21      MR. HAAR:  I was unable to find any cases that

22  specifically addressed ADA standing under the state claim.

23      THE COURT:  Do you have any cases that you think are

24  analogous under state law?

25      MR. HAAR:  Not off the top of my head, Your Honor.      03:38PM

1    Simply the fact that both the ADA and the state ADA require

2    some injury to be remedied.  This organization can't possibly

3    even be disabled.  It simply follows that they don't have

4    standing to pursue their claim either in state court or in

5    federal court.                                            03:38PM

6         I also think that Your Honor can dismiss the case with

7    prejudice under both mootness and futility, because as we have

8    briefed, the alleged technical violation has been remedied and

9    we have been given a clean bill of health.  So that means that

10   to the extent they are able to amend the claims, or amend their   03:39PM

11   complaint and demonstrate standing at the time the complaint

12   was filed, that amendment would be futile, as would if the case

13   were remanded to state court.

14        And finally, I think that the Court has authority to

15   dismiss with prejudice on grounds that the claims were brought   03:39PM

16   in bad faith with no reasonable basis and intended to harass.

17        THE COURT:  All right.  Thank you.

18        Do you have anything more you wanted to add?

19        MR. WILENCHIK:  Your Honor, you know, I feel like

20   those issues are somewhat -- very much outside the scope of the   03:39PM

21   proceeding as far as mootness and the rest of the way those

22   kind of things go.  If there's any intention to rule on any one

23   of those bases, we would request that they actually file a

24   motion to dismiss on those bases so they could be properly

25   briefed.                                                  03:40PM

1        THE COURT:  I will tell you what.  I see you standing,

2   Mr. Valente.  I will hear from you.

3        I will go ahead and rule.  I'm going to rule.  The

4   only thing I might have interest in is this idea that a

5   corporation and an LLC can assert a member or an organizational        03:40PM

6   standing that goes beyond any members of the organization.

7   Does anybody want to brief that question, or do they just want

8   me to research it and see what they find?

9        MR. WILENCHIK:  We would like to brief that, Your

10  Honor.        03:40PM

11       THE COURT:  I'm not inclined to give you very long to

12  brief it.  How long are you going to need?

13       MR. WILENCHIK:  As soon as I get back to my office I'm

14  going to hit the books.

15       THE COURT:  That isn't an answer to my question.        03:40PM

16       MR. WILENCHIK:  I can file something later today.

17       THE COURT:  By?

18       MR. WILENCHIK:  Later today.

19       THE COURT:  Do you want to even brief the question?

20       MR. HAAR:  If at all possible we would like an        03:41PM

21  opportunity to respond.

22       THE COURT:  I am not going to give you an opportunity

23  to respond.  I will let you simultaneously brief it.  If you

24  need a day or two longer than Mr. Wilenchik is asking for I

25  will give you all that time but I want it simultaneously        03:41PM

1  briefed.  I'm not going to wait to go back and forth on motions

2  to reply and responses.  How long do you want?

3      MR. HAAR:  If we could have until this next Tuesday I

4  think that would be sufficient.

5      THE COURT:  Mr. Valente, do you have any interest in            03:41PM

6  briefing it?

7      MR. VALENTE:  I don't have interest in briefing it but

8  I'm not going to say that we won't, Your Honor.  I will try to

9  confer with counsel.  Maybe we can do something together.

10     THE COURT:  Well, you have an LLC.  He has a                    03:41PM

11 corporation.  The law may be different.

12     MR. VALENTE:  I suspect the issues may be somewhat

13 similar.

14     THE COURT:  They may be.

15     Mr. -- is it Potts?                                            03:41PM

16     MR. POTTS:  Yes.  I will confer with Mr. Haar.

17 Tuesday should be plenty.

18     THE COURT:  If anybody wants to brief that, you have

19 until Tuesday to brief it.  Okay.  And that includes you, Mr.

20 Wilenchik.                                                          03:42PM

21     MR. WILENCHIK:  Yes, sir.

22     THE COURT:  Mr. Valente, did you want to say

23 something?

24     MR. VALENTE:  One final point on the futility issue,

25 Your Honor.  Again, this was raised for the first time in the      03:42PM

```
 1    reply today, essentially.  Any state law claim that went back
 2    would be futile because there's no claim for damages here.  Mr.
 3    Ritzenthaler has never been there.  Ms. Puckett is not a party
 4    to this lawsuit.  And the organization itself can't have any
 5    damages from this.  And there's case law that says that an          03:42PM
 6    organization, while it may have standing in certain
 7    circumstances, associational standing to pursue a claim on
 8    behalf of its members, it can't pursue a claim for damages if
 9    that organization's very point of being is to file litigation
10    on behalf of entities, on behalf of their members.  And I have     03:43PM
11    case law on that, Your Honor, if you want it.
12             THE COURT:  Is it, Mr. Wilenchik, is it federal and
13    state statutes only give injunctive relief?
14             MR. WILENCHIK:  Federal only injunctive as well as
15    litigation expenses.  State allows for damages; also allows for    03:43PM
16    injunctive relief.
17             THE COURT:  Allows for damages but does it provide
18    statutory damages or only allows for actual damages?
19             MR. WILENCHIK:  It allows for actual damages, is my
20    understanding.                                                     03:43PM
21             THE COURT:  Do you have any claim for actual damages
22    here?
23             MR. WILENCHIK:  Well --
24             THE COURT:  You have plaintiffs who haven't even been
25    to the spot until after the litigation was filed.  Is there any    03:43PM
```

1   actual damage claim?

2           MR. WILENCHIK:  In that scenario, no, unless we were

3   allowed to amend the complaint.  But I think the bigger point

4   here is -- again, the standing analysis, *Bennett v. Brownlow* is

5   the case that says the Arizona courts can waive standing.  The          03:43PM

6   Court should remand unless its absolutely certain that it would

7   be futile.

8           THE COURT:  But we're talking futility here.  Even

9   under the state law claim, if all you can get is actual damages

10  and you don't have any claim for actual damages, and the                03:44PM

11  problem has been fixed, what is there left?

12          MR. WILENCHIK:  Injunctive.  We can also get

13  injunctive relief under state law.

14          THE COURT:  You can't get injunctive relief for a

15  problem that doesn't exist.                                             03:44PM

16          MR. WILENCHIK:  Well, now we're getting to mootness

17  and the issue of voluntary cessation, which is a big issue in

18  this case which is why we briefed it.  It's an issue in just

19  about every one of them.

20          THE COURT:  What?                                               03:44PM

21          MR. WILENCHIK:  We run into these issues of mootness,

22  voluntary cessation and all of these questions.  That's the

23  answer to your question.  It's not moot.

24          THE COURT:  It certainly is moot when you don't have

25  -- when you don't have anybody who has been to the site before         03:44PM

1    the problem was fixed.

2          MR. WILENCHIK:  Not in terms of getting injunction to

3    fix the problem.

4          THE COURT:  The problem is fixed.  You are not going

5    to get an injunction to fix a problem that doesn't exist.        03:44PM

6          MR. WILENCHIK:  The issue is it can be changed.  This

7    is a big issue in this case is because we can't sue in the

8    first place unless it's readily fixable.  If it's readily

9    fixable it's readily unfixable.

10         THE COURT:  So you think Costco is going to go around    03:45PM

11   and have the sign moved back down six inches?  Any reason to

12   believe Costco is going to go move its sign back down six

13   inches?

14         MR. WILENCHIK:  Unless it's absolutely certain

15   basically they won't.  We believe we have jurisdiction.  This   03:45PM

16   is an important issue.  I feel if they want to file a separate

17   motion to dismiss on that basis we'll entertain it.  The

18   voluntary cessation doctrine needs to be applied in these cases

19   because we briefed the issue.  There is a Supreme Court case,

20   *Buchannon*, that says otherwise you don't get your fees.  So    03:45PM

21   that's why you have to be able to argue voluntary cessation as

22   an exception of mootness in these cases.  Otherwise just about

23   every one is moot.  You can't sue unless it's readily fixable.

24         THE COURT:  The issue here is did you ever have

25   standing to sue?                                                03:46PM

1          MR. WILENCHIK:  And I understand the Court is probably

2    inclined to rule under Article III we do not.  But again, under

3    state law, we may have standing.  Unless it's absolutely

4    certain we don't, it's not a futile act to remand.

5          THE COURT:  All right.  Well, you have until Tuesday      03:46PM

6    to file your supplemental briefing.  And it has to be jointly

7    filed.  We're not going to be responding and replying.  And I

8    will issue my determination shortly thereafter.

9          Thank you.

10          MR. WILENCHIK:  Thank you, Your Honor.                   03:46PM

11          (Proceeding concluded at 3:46 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5                        C E R T I F I C A T E

6

7            I, LAURIE A. ADAMS, do hereby certify that I am duly

8   appointed and qualified to act as Official Court Reporter for

9   the United States District Court for the District of Arizona.

10           I FURTHER CERTIFY that the foregoing pages constitute

11  a full, true, and accurate transcript of all of that portion of

12  the proceedings contained herein, had in the above-entitled

13  cause on the date specified therein, and that said transcript

14  was prepared under my direction and control.

15           DATED at Phoenix, Arizona, this 31st day of October,

16  2016.

17

18                              s/Laurie A. Adams

19                              _____
                                Laurie A. Adams, RMR, CRR

20

21

22

23

24

25