**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Matthew T. Anderson (025934)
mta@jaburgwilk.com
Aaron K. Haar (030814)
akh@jaburgwilk.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Advocates for Individuals with Disabilities Foundation, Inc., | Case No. 2:16-cv-02413-GMS |
| Plaintiff, | **Reply in Support of Application for Award of Attorney Fees and Related Non-Taxable Expenses** |
| v. | |
| Golden Rule Properties, LLC, | (Assigned to the Hon. G. Murray Snow) |
| Defendant. | |

Defendant Golden Rule Properties, LLC ("Golden Rule"), hereby, files its Reply in Support of its Application for Award of Attorney Fees and Related Non-Taxable Expenses. The fees incurred by Golden Rule in this Court were a direct result of Plaintiff's bad faith litigation tactics. Golden Rule's fees were necessary and reasonable under the circumstances. This Reply is supported by the following Memorandum of Points and Authorities and by an Amended Declaration of Matthew T. Anderson to account for the expenses incurred in preparing this Reply. Golden Rule respectfully requests an award of attorney fees in the amount of **$12,356.50** and non-taxable costs of **$406.00**.

/ / /

/ / /

/ / /

18828-18828-00001\AKH\AKH\2281394.2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The arguments in Plaintiff's Response exemplify the frivolity of Plaintiff's antics. Plaintiff exercises a great deal of creative license with the facts. Plaintiff argues it was Golden Rule that engaged in bad-faith conduct by removing the case in the first place—despite the Court's prior finding that Plaintiff and its attorneys deliberately misled Golden Rule for the purpose of imposing the unnecessary expense of removal-remand. Notably, Golden Rule only opposed Plaintiff's immediate motion to dismiss its federal claims to the extent the proposed order did not require Plaintiff to reimburse Golden Rule's expenses. (Doc. 12, p. 1).

And despite the parties' exhaustive briefing on the issues of standing and the propriety of sanctions (including Plaintiff's motion to reconsider), Plaintiff now takes another shot, forcing Golden Rule to spend additional time addressing the arguments. Plaintiff then spends a substantial portion of its Response purporting to argue the merits of the case—clearly a last-ditch attempt to distract from its bad-faith conduct. But the merits of its claims are not at issue; and, in any case, Golden Rule disputes Plaintiff's material allegations (though, Plaintiff somehow concludes "[t]here is no factual dispute from Defendant" [Doc. 33, p. 2]).

Ultimately, the fees incurred by Golden Rule were compelled by Plaintiff's unnecessary and unreasonable actions. Plaintiff's arguments as to the reasonableness of Golden Rule's fees are unsupported by rational argument or competent evidence. Golden Rule's fees were unquestionably necessary and reasonable under the circumstances.

## II. ARGUMENT

### A. Golden Rule's Fees and Costs Were Reasonable and Necessary.

#### 1. Removal was appropriate

Golden Rule properly removed the lawsuit under federal question jurisdiction because Plaintiff alleged a count under the federal Americans with Disabilities Act.

2

(Doc. 1). Plaintiff attempts to pass the buck by asserting *Golden Rule* had bad intentions by removing to federal court. Plaintiff alleges that Golden Rule should have known that the only possible outcome was remand to state court and that removal was intended to insert delay and drive up Plaintiff's costs. (Doc. 33, p. 3). This claim, however, ignores the fact that Golden Rule attempted to avoid the cost of removal if Plaintiff did not intend to pursue its federal claim in district court. Moreover, Golden Rule only opposed dismissal of the federal claim to the extent the corresponding order did not require reimbursement of its fees and costs. (Doc. 12, p. 1). The Court raised the issue of standing *sua sponte*, and Golden Rule did not have the opportunity to address the full battery of its possible arguments. After misleading Golden Rule to believe it could defend in federal court, the fact that Plaintiff now claims the only possible outcome was remand only serves to highlight the impropriety of Plaintiff's purposeful imposition of costs associated with the removal-remand procedure.

### 2. Golden Rule has a binding agreement with counsel.

Plaintiff then makes the bizarre claim that Golden Rule never contracted to pay fees to its attorneys because the only evidence of a fee agreement is an email "with an individual Defendant's attorney identifies as Gregory Page" and a fee agreement for a different matter (Doc. 33, p. 4). As indicated in Golden Rule's declaration of counsel and attachments, Golden Rule entered a fee agreement with counsel for another matter, and representation for the current matter was later added to that agreement, as confirmed by the email. (Doc. 30-1 ¶ 4 & Ex. 2). The fee agreement, addressed to Greg Page, clearly states the representation concerns "[d]efense of ADA lawsuit" concerning properties located at 2706 E. University Drive and 3592 S. Atherton Blvd. (*Id*., Ex. 2). The attached email to Greg Page—with "Golden Rule Properties, LLC" in the subject line—confirms the additional address of 454 N. Lindsay Road (the property at issue in this lawsuit) will be defended under the same terms as the previously entered fee agreement "for the 2706 and 3592 complaints." (*Id*.).

Plaintiff's claim that there is no agreement between Golden Rule and its counsel is disingenuous. Plaintiff is well aware that Greg Page is the client representative for Golden Rule Properties, LLC. Plaintiff made the exact same arguments in response to Golden Rule's fee application in another matter concerning the adjacent building also owned by Golden Rule—the "2706 E. University Dr" address referenced above. *See* Response to Fee Application (dkt. 16) p. 2, *AID v. Golden Rule Properties, LLC*, 2:16-cv-02412-SPL (D. Ariz. Sep. 9, 2016). As Golden Rule explained therein, Greg Page is the property manager for Golden Rule. Public records also show Mr. Page is the statutory agent for Golden Rule Properties, LLC. *See* Golden Rule Properties, LLC, File No. L15896258, Ariz. Corp. Comm'n, *available at* http://ecorp.azcc.gov/Details/Corp?corpId=L15896258. Interestingly, Plaintiff's "Parking Inspection Report" for the current property—which Plaintiff filed with its Response to Order to Show Cause—includes the print-out from the Arizona Corporation Commission website, demonstrating that Plaintiff's counsel has and had this information in its actual possession. (Doc. 23-1, p. 12). The Parking Inspection Report in the other *Golden Rule* case (for the adjacent "2706 E. University Dr." building) also included the print-out from the Corporation Commission website. And, as with the previous fee application, the billing statement attached to the current fee application identifies Golden Rule, LLC as the client and lists Greg Page as its contact. (Doc. 30-1, Ex. 1). Nevertheless, Plaintiff asserts the same unfounded claim that Golden Rule does not have a fee agreement with counsel, and that Greg Page does. As indicated above, this argument is unfounded.

Plaintiff's argument that there is no agreement between Golden Rule and its counsel is entirely frivolous and demonstrates the lack of any reasonable argument on behalf of Plaintiff.

    **3.**    **The rates charged by Golden Rule's counsel are reasonable.**

Plaintiff next attempts to convert its argument regarding the fee agreement into a claim that Golden Rule's counsel deceptively misled and overcharged its

4

"unsophisticated client." (Doc. 33 p. 5). Plaintiff makes the conclusory assertion, without supporting evidence, that the associate on the case, Attorney Aaron Haar, is "a new attorney without relevant experience" and that his billable rate is not justified. (*Id.*) Plaintiff argues that because "the email claimed to act as a contract for legal services [contains] no rates or billing procedures," the time billed for Mr. Haar is an "attempt to use untrained legal work and pass it off at rates much greater than rates understood by those familiar with standard business and legal practices." (*Id.*)

Plaintiff provides no support for these wild claims. Plaintiff fails to address the declaration supporting the fee application, affirming that the rate is reasonable. (Doc. 30-1 ¶ 14). And Plaintiff does not address the authority cited in the fee application, which demonstrates a rate of $220 per hour is appropriate for an associate with approximately three years of experience. (Doc. 30, p. 7–8). And, despite Plaintiff's claim that "the email" does not contain billing rates, the attached fee agreement that the email makes applicable, lists a range for associates between $150 and $300 per hour. (Doc. 30-1, Ex. 2). Plaintiff's belligerent and unsupported claims appear intended only to cause a rift between Golden Rule and its counsel. But Plaintiff's claims are unfounded and fail to reasonably controvert that the billing rates are reasonable.

### 4. There were no lapses in billing judgment.

Plaintiff next claims that Attorney Matthew Anderson, Golden Rule's lead attorney, is *not* best suited to make the appropriate declaration because "Attorney Aaron K. Haar performed nearly all of the work in this matter." (Doc. 33, p. 6). However, Mr. Anderson is the responsible attorney on this matter. He has managed and overseen the litigation to date. He exercised ultimate strategic judgment in how to defend this case. He made the decisions regarding what time should be billed and what time should not be billed. And he is the senior attorney whose relative experience makes him most able to opine as to the reasonableness of Golden Rule's fees. Thus, Plaintiff's arguments to the contrary are unfounded.

Plaintiff's counsel then strangely argues against the efficiency and savings that now directly inure to Plaintiff's benefit. Golden Rule's lead counsel delegated responsibilities to Mr. Haar (an associate with a lower billing rate) whenever possible to preserve Golden Rule's resources. Yet Plaintiff claims it was improper "to assign two attorneys and charge [Golden Rule] for two attorneys on a relatively simple matter with no facts in dispute." (*Id*.) This claim is particularly insincere: Plaintiff has had *six* attorneys appear in this matter to date. And, of course, Golden Rule contested most, if not all, of the material facts alleged by Plaintiff—a reality of which Plaintiff is well aware based on Golden Rule's Answer.

Golden Rule's fees (and, thus, Plaintiff's fees) would have been much higher if all the work had been done by the senior attorney. And, despite Plaintiff's earlier assertion that "Attorney Aaron K. Haar performed nearly all of the work in this matter," Plaintiff then suggests that "Mr. Haar's involvement in this case is done by his firm for his training and education." (*Id*.) Plaintiff claims "[t]he overall pattern shows a firm's intent to educate a new attorney rather than assign a single qualified lawyer." (*Id*.). Plaintiff's argument is fanciful, to say the least. Notably, Plaintiff's attorney, Fabian Zazueta, who, upon information, has done most of the work for Plaintiff in this matter, was only recently admitted to practice on December 24, 2015—more than two years *after* Mr. Haar was admitted. To argue Mr. Haar's involvement in this case was merely for purposes of training or education is unreasonable and impertinent. Golden Rule could not have produced the work it did in the amount of time spent by Mr. Anderson alone. Indeed, Plaintiff and its counsel recognize this fact when they later complain that "the lack of time by the claimed expert attorney shows a lack of involvement and lack of concern." (*Id*.)

Plaintiff next alleges that much of the time spent by Golden Rule's counsel was duplicative and unnecessary. Other than its conclusory claims to that effect, Plaintiff presents no evidence or reasonable argument to demonstrate either. Rather, Plaintiff's conduct necessitated the significant expenditure of time. Even where Golden Rule's

6

counsel conferred to discuss strategy and procedural options in light of Plaintiff's litigation conduct, the billing statement demonstrates Golden Rule was never charged for two attorneys at the same time. But even if it had been, the time spent conferring was necessary to defend against Plaintiff's strategically oppressive conduct.

Plaintiff specifically challenges three items in Golden Rule's billing statement. First, Plaintiff argues that 3.2 hours researching the issue of associational standing is unreasonable because the topic "should be well within the areas of expertise of Mr. Anderson and the firm's outside expert." (*Id.*) But associational standing is not a common issue presented in cases concerning the Americans with Disabilities Act, where a serial plaintiff is typically a disabled individual, not a corporate entity. Thus, the time spent researching was necessary and appropriate—and, in fact, could have been avoided if Plaintiff had not acted to impose the removal-remand procedure or if Plaintiff had spent some time evaluating whether it had standing before launching a thousand lawsuits. This shoot-first-ask-questions-later litigation tactic exemplifies Plaintiff's efforts to drive up costs to extract a maximum settlement for minimal effort.

Plaintiff next claims Golden Rule spent 24.4 hours on its briefing regarding the Order to Show Cause and, thereafter, spent over 8.3 hours on the hearing. (*Id.*) Initially, Golden Rule's counsel was unable to re-create this alleged "24.4 hours" based on the billing statement attached to their fee application. So, Golden Rule cannot fully reply to this argument. However, a few comments are in order: To reach that number, Plaintiff unquestionably included various entries that were not actually charged to Golden Rule (and, thus, will not be charged to Plaintiff). The briefing filed in response to the Order to Show Cause took approximately 20 hours of billed time. This time was reasonable in light of the complicated issue of standing, coupled with Plaintiff's initial failure to sufficiently allege standing and subsequent scrambling to assert various facts and theories to generate standing thereafter. *Cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588, 119 S. Ct. 1563, 1572 (1999) (explaining that federal subject matter

Case 2:16-cv-02413-GMS   Document 38   Filed 11/09/16   Page 8 of 10

jurisdiction and standing are often difficult and novel subjects); *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012) (same).

In addition to the time spent researching and drafting, Golden Rule's filing required additional time investigating, conferring with an ADA expert, drafting supporting declarations, and locating/producing relevant exhibits. Plaintiff's haphazard litigation efforts further amplified the time required to litigate—including, for example, naming incorrect entities and attaching the incorrect "Parking Inspection Report" to its Response to Order to Show Cause. Notably, Golden Rule has not included the cost of the ADA expert in the fee application because such costs would have been properly expended in the state court matter. However, counsel's time spent conferring with the ADA expert solely for purposes of producing the declaration in support of its Order-to-Show-Cause briefing is not recyclable for use in the state-court proceedings—and is, therefore, properly included in the fee application.

As for the hearing on the Order to Show Cause, Golden Rule's counsel reasonably spent 8.3 hours (5.9 hours preparing, and 2.4 hours attending). Significant preparation was necessary due to the complexity of the subject matter, the requisite familiarity with a broad array of issues and case law, and Plaintiff's constantly moving target of facts and law in an effort to generate standing after the fact. This moving target was evidenced by Plaintiff's disavowal of associational standing early in the show-cause hearing, only to argue associational standing in its supplemental briefing. Golden Rule's counsel attended the prior contiguous hearings in the companion show-cause cases, allowing the Court and Plaintiff to avoid rehashing various arguments, inclinations, and discussions—and, in fact, generating a windfall to Plaintiff with Plaintiff's entire team of lawyers in attendance. Moreover, the evidentiary nature of the Golden-Rule hearing comparatively extended the proceedings due to the inquiry concerning Plaintiff and its counsel's bad faith litigation conduct. Thus, the time counsel spent preparing for and attending the hearing was reasonable and necessary under the circumstances.

8

### B.  Golden Rule Is Entitled to Recover Its Fees and Costs.

As the Court previously ruled, Golden Rule is entitled to recover its fees and costs under 28 U.S.C. § 1447(c) and 28 U.S.C. § 1927. (Doc. 28). The Court has several times refuted Plaintiff's invocation of *Baddie v. Berkeley Farms, Inc.*, 64 F.3d 487 (9th Cir. 1995), because the facts of *Baddie* were not sufficiently analogous to the facts here, where Plaintiff affirmatively misrepresented its intent for the sole purpose of taxing its opponent. Nevertheless, Plaintiff, again relying on *Baddie*, argues the Court lacks authority to grant fees and costs under the circumstances. (Doc. 33, p. 6–7). Plaintiff further asserts it would be "anomalous" to award fees and costs where defendants would not otherwise obtain fees after a trial on the merits. (*Id.*, p. 7). But this argument continues to ignore that the award of fees and costs is intended to correct the inappropriate imposition of expenses arising from Plaintiff and its counsel's bad faith conduct. The award—much like the imposition—is not tied to the merits of the case. The costs of defending an ADA claim brought and pursued in good faith would never have included the fees and costs at issue here. Thus, the award is entirely appropriate. And, in any event, the plain language of the ADA authorizes fees to the prevailing party, thereby making an award after trial on the merits possible. *See* 42 U.S.C. § 12205.

Therefore, Golden Rule is entitled to recover its fees and costs, and Plaintiff's attempt to re-argue the propriety of such an award is inapposite.

### III.  CONCLUSION

For the foregoing reasons, and consistent with the Court's October 13, 2016 award of fees and costs, Defendant Golden Rule Properties, LLC respectfully requests the Court award it attorney fees of **$12,356.50** and its related non-taxable costs of **$406.00**.

/ / /

/ / /

/ / /

DATED this 9th day of November, 2016.

**Jaburg & Wilk, P.C.**

/s/ Aaron K. Haar
Matthew T. Anderson
Aaron K. Haar
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
Attorneys for Defendant

*Certificate of Service*

I hereby certify that on this 9th day of November, 2016, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Strojnik, Esq.
Strojnik P.C.
1 East Washington Street, Suite 500
Phoenix, Arizona 85004
ps@strojnik.com

Fabian Zazueta, Esq.
Advocates for Individuals with Disabilities
40 North Central Ave, Suite 1400
Phoenix, AZ 85004
Telephone: (774) 768-2233
fabian@aid.org

Dennis I. Wilenchik, Esq.
Lawrence J. Felder, Esq.
John D. Wilenchik, Esq.
Brian J. Hembd, Esq.
Wilenchik & Bartness, P.C.
2810 North Third Street
Phoenix, Arizona 85004
Telephone: (602) 606-2810
admin@wb-law.com

Attorneys for Plaintiff


/s/Kelli Cunningham