WO

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Advocates for Individuals with Disabilities Foundation Incorporated,

Plaintiff,

v.

Golden Rule Properties LLC,

Defendant.

No. CV-16-02413-PHX-GMS

**ORDER**

On August 25, 2016, this Court issued an Order for the Plaintiffs to Show Cause as to why this case should not be dismissed for lack of standing. (Doc. 22.) For the following reasons, the Court remands the case to state court, awards fees to the Defendant pursuant to 18 U.S.C. § 1447, and issues sanctions against the Plaintiff's counsel pursuant to 28 U.S.C. § 1927.

**BACKGROUND**

Plaintiff Advocates for Individuals with Disabilities ("AID") is a non-profit charitable organization that advocates for disabled individuals. It is represented by attorneys Peter Strojnik and Fabian Zazueta, who also make the decisions on behalf of the client. Part of AID's strategy involves filing law suits against local businesses that violate the Americans with Disabilities Act ("ADA") and similar state statutes. To date, 162 of these claims have been filed in or removed to this Court, and approximately one thousand of such claims have been filed in state court. Each claim's complaint contains the same general language alleging that the local business violated the ADA by having

inadequate signage or parking spaces for disabled individuals.

AID filed a complaint against Defendant Golden Rule Properties LLC ("Golden Rule") on June 9, 2016 in Maricopa County Superior Court. (Doc.1.) The complaint stated that Defendant Golden Rule's parking lot failed to comply with the ADA and the Arizona Disability Act because it failed to "identify car parking spaces by the designation 'van accessible' and or fails to maintain the minimum height of 60 inches" above the floor. (Doc. 1, Ex. 1 at 5.)

The complaint does not allege that any disabled individual encountered the Defendant's defective signage. Rather, it asserts that "Plaintiff, who is known to have a relationship or association with individuals with disabilities," (Doc. 1, Ex. 1 at 5), investigated the Defendant's business and found that it "was not accessible to persons with disabilities." (*Id.*) Because these general allegations do not illustrate that AID has a "concrete and particularized" injury that affects it "in a personal and individual way," the Court ordered AID to show cause why this case should not be dismissed for lack of standing.

Furthermore, AID's pre- and post- removal conduct demonstrates an attempt to increase the costs of litigation to maximize Defendants desire to settle the suit due to the cost of defense. Because Golden Rule's counsel had represented other defendants in cases brought by the Plaintiff and had defendants dismiss the federal claim immediately upon removal to federal court to require remand of the remaining state law disability claim to state court, Golden Rule reached out to AID and its counsel to determine their intent to proceed with the federal claim prior to initiating the removal process. (Doc. 22 at 13.) Defense counsel suggested a willingness to stipulate to a dismissal of the federal court claim to avoid the incurred expense and time of removal, dismissal and remand. AID assured Golden Rule and its counsel that it intended to proceed with the federal claim. (*Id.*) Yet immediately following removal, AID moved to dismiss the federal claim. (*Id.*) In light of these events, the Court also ordered AID to show cause why AID should not bear the costs of removal and why its counsel should not be sanctioned for their

actions pursuant to 28 U.S.C. § 1927.

## DISCUSSION

### I. Plaintiff Lacks Article III Standing, and Thus This Case is Remanded to State Court.

"To invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of litigation." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). After reviewing Plaintiff's response to the Order to Show Cause, hearing oral arguments, and reviewing the supplemental briefings, the Court finds that AID does not have standing to pursue this suit.

An association may sue on behalf of one of its injured members if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). This analysis also applies to situations where the organization does not have traditional "members," provided that the purported constituency "possess[es] all of the indicia of membership" in an organization. *Id.* at 344.

#### A. Plaintiff does not Allege Sufficient Facts to Assert that Either Ms. Puckett or Mr. Ritzenthaler is a Member of AID.

Nonprofit corporations may file lawsuits on behalf of their members even if it does not have members in the traditional sense. *See Sierra Ass'n for Env't v. F.E.R.C.*, 744 F.2d 661, 662 (9th Cir. 1984) (allowing a California corporation to file suit as an unincorporated association due to the presence of federal question jurisdiction). However, in these situations, a nonprofit must still allege sufficient facts to show that a purported member "possess[es] many indicia of membership—enough to satisfy the purposes that undergird the concept of associational standing: that the organization is sufficiently

Case 2:16-cv-02413-GMS Document 28 Filed 10/13/16 Page 4 of 11

identified with and subject to the influence of those it seeks to represent as to have a personal stake in the outcome of the controversy." *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003) (internal quotations and citations omitted).

The Supreme Court provided examples of relevant "indicia of membership" in *Hunt*. 432 U.S. at 344–45. Key factors include whether the proposed constituency maintained control over who was elected to leadership of the association, if the proposed constituency was the only group that could service on the leadership board, and whether the proposed constituency financed the association's activities (including litigation). *Id.* The analysis turns on whether the association "provides the means by which they express their collective views and protect their collective interests." *Id.*

The Plaintiff's complaint does not mention a single individual member of AID by name. (Doc. 1, Ex. 1.) Rather, the complaint attempts to allege that the Plaintiff has a "close relationship" with all "former, current and future disabled individuals" due to its "charitable acts." (Doc. 1, Ex. 1 at 3.) There is a total absence of specific facts to support these conclusory assertions. (*Id.*) Nothing in the complaint alleges that any of the indicia listed by the *Hunt* Court are present in this case. (*Id.*)

In its Response to the Order to Show Cause, the Plaintiff mentions two purported members, Ms. Shannon Puckett and Mr. David Ritzenthaler. However, the Plaintiff failed to assert a basis of membership for either individual. Instead, AID argued that any individual that tests a location for ADA compliance in connection with its serial lawsuits exerts influence over the litigation, and is thus a member. (Doc. 22 at 5.) Even if the Court could agree that participation as a tester amounts to exerting influence over litigation, this alone cannot be said to grant the tester "many indicia" of membership. *Oregon Advocacy Ctr.*, 322 F.3d at 1111. The Plaintiff again dodged the question in its Reply to the Order to Show Cause, stating that the question of membership "is not germane to the proceedings." (Doc. 24 at 5.)

In the absence of demonstrating that either Ms. Puckett or Mr. Ritzenthaler have any indicia of membership, there is no basis on which AID may assert standing based on

Case 2:16-cv-02413-GMS Document 28 Filed 10/13/16 Page 5 of 11

their alleged injury. Further, as discussed below, even if Ms. Puckett and Mr. Ritzenthaler were members, AID may not rely on them to provide associational standing in this lawsuit.

**B. Neither Ms. Puckett nor Mr. Ritzenthaler Suffered an Injury-in-Fact, Thus Neither Can Provide AID with Associational Standing.**

An association may only assert standing on behalf of a member if the member has standing. *Hunt*, 432 U.S. at 343. For an individual member to have standing under Article III, he must satisfy three elements: 1) an injury-in-fact, 2) causation between the injury and the allegedly wrongful conduct, and 3) the injury is likely redressable by the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The burden is on the plaintiff to establish that standing exists. *See id.* ("The party invoking federal jurisdiction bears the burden of establishing these elements.").

An injury-in-fact must be "(a) concrete and particularized and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.' " *Lujan*, 504 U.S at 560 (internal quotations and citations omitted). This requires that "the party seeking review must allege facts showing that he is himself adversely affected." *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972). In ADA cases, a plaintiff experiences an injury-in-fact when "a disabled person *encounters an accessibility barrier* violating its provisions." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011) (emphasis added). The barrier does not need to completely hinder the plaintiff's ability to enter or use the facility, but it must "interfere with the plaintiff's 'full and equal enjoyment' of the facility." *Id.* (quoting 42 U.S.C. § 12182(a)).

AID cannot assert standing on behalf of Ms. Puckett or Mr. Ritzenthaler because neither suffered an injury-in-fact. Nothing in AID's complaint alleges that Ms. Puckett, Mr. Ritzenthaler, or any other member ever personally encountered the barrier in question. (Doc. 1, Ex. 1.) In fact, the complaint does not mention Ms. Puckett or Mr. Ritzenthaler at all. (*Id.*) The complaint merely alleges that "Plaintiff has actual knowledge of at least one barrier related to third party disabled individuals" on the

Defendant's property. (*Id.* at 6.) Likewise, a declaration filed by the Plaintiff establishes that Ms. Puckett was "informed" of the defective signage, but does not state that she ever actually encountered the defective signage. (Doc. 21-1 at 18.)

Contrary to Plaintiff's assertions, mere knowledge of the Defendant's lack of signage is insufficient to show injury-in-fact. In *Pickern v. Holiday Quality Foods Inc.*, the Ninth Circuit found that a plaintiff who had visited the defendant's grocery store in the past had standing to bring an ADA claim based on the barriers he personally encountered as well as the barriers that he did not have the chance to encounter during his visit. 293 F.3d 1133, 1138 (9th Cir. 2002). That case did not involve a situation where, as here, the plaintiff never frequented the defendant's establishment prior to filing suit. *Id.* In fact, none of the cases cited by the Plaintiff hold that an injury-in-fact occurs by virtue of the plaintiff's knowledge of a potential barrier. *See Pickern*, 293 F.3d at 1135 (plaintiff visited the store in question multiple times); *Chapman*, 631 F.3d at 943 (plaintiff frequented the defendant's store and personally encountered barriers that deprived him of "full and equal enjoyment of the facility."); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1326 (11th Cir. 2013) (plaintiff visited and encountered barriers to entry at a grocery store). Therefore, AID's vague assertions that it had "knowledge of at least one barrier" at the Defendant's parking lot is insufficient to establish that its members suffered an injury-in-fact, and thus AID does not have standing to pursue this case.

**II. Leave to Amend or Supplement the Pleadings**

The Plaintiff's Response to the Order to Show Cause states that the "Plaintiff wishes to file for leave to amend the Complaint or file a Rule 15(d) supplemental pleading." As of this moment, the Plaintiff has not yet filed any such motion for leave. If the Plaintiff did, this request would be denied.

District courts are permitted to deny leave when it finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S.

178, 182 (1962).

AID's counsel has more than 160 ADA cases currently pending in this Court. The complaints are largely identical. None of the complaints contain any specific factual allegations. (Doc. 1, Ex. 1.) Instead, they each contain the same boilerplate language and assert vague, conclusory allegations. (*Id.*) Counsel relies on the use of clauses such as "and/or" to ensure that the form complaint may be used in multiple situations. (Doc. 1, Ex. 1 at 6.) The complaint filed in this case even refers to the Defendant as a hotel, which it is not. (*Id.*) Given these facts alone, the Court would not grant leave to file an amendment.

However, permitting leave to file an amendment would also be futile in this case. As noted in the Defendant's Response to Show Cause, the Defendant remedied the alleged ADA violations and is now ADA compliant. (Doc. 22 at 12.) Apparently, neither Ms. Puckett nor Mr. Ritzenthaler visited the Defendant's property during the time that it was noncompliant. (Doc. 21-1 at 18.) Thus, they never encountered any barrier. Permitting an amendment to the complaint at this point would be futile. Neither purported member was injured by the noncompliance when it existed, and now that the noncompliance is remedied, no injury can occur. Therefore, the Plaintiff will not be granted leave to supplement or amend their complaint.

**III. Remand to State Court is Proper in This Case**

The removal statute instructs that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The Ninth Circuit has implied that where a plaintiff would lack standing in state court as well, a district court may dismiss the entire suit without remand. *See Bell v. City of Kellogg*, 922 F.2d 1418, 1424–25 (9th Cir. 1991) ("Where the remand to state court would be futile, however, the desire to have state courts resolve state law issues is lacking. We do not believe Congress intended to ignore the interest of efficient use of judicial resources.") However, this should be applied only "where there is absolute certainty that remand would prove futile." *Id.* at 1425 (internal citations and quotations

omitted).

Arizona law does not impose the same standing requirements on parties that the federal Constitution does. *Armory Park Neighborhood Ass'n v. Episcopal Cmty. Servs. in Arizona*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985).

Due to Arizona's flexible standing requirements, the Court cannot say that there is "absolute certainty" that AID's claims would be dismissed if they were remanded to state court. *Bell*, 922 F.2d at 1425. Therefore, remand to the state court is the appropriate action in this case. Furthermore, the Court will not dismiss the federal claims on remand because the state courts have concurrent jurisdiction to hear the claims. *See Yellow Freight Sys., Inc. v. Donnelly*, 494 U.S. 820, 821 (1990) ("[W]e conclude that Congress did not divest the state courts of their concurrent authority to adjudicate federal claims.").

**IV. Defendant is Awarded Fees Incurred Between Removal and Remand**

If an attorney "multiplies the proceedings in any case unreasonably and vexatiously," he "may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Attorneys may only be held personally liable for fees under Section 1927 if the attorney acted in bad faith. *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Estate of Blas Through Chargualaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) (internal citations omitted).

In a similar fashion, Section 1447(c) permits district courts to assign "payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal" against a party if "at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447. Assigning fees to a party is not the norm, but it is an available option in instances where "such an award is just." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 138 (2005).

/ / /

The standard for awarding fees against a party under Section 1447(c) does not require a finding of bad faith. Rather, the analysis in Section 1447(c) generally turns on the "reasonableness of the removal." *Id.* at 141. The Supreme Court noted in *Martin* that district courts "retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case."[1] *Id.* However, "discretion is not whim, and limiting discretion according to legal standards helps promote the basic principle of justice that like cases should be decided alike." *Martin*, 546 U.S. at 139. The test for "awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party" while also recognizing that parties make strategic decisions in litigation. *Id.* at 140.

In *Baddie v. Berkeley Farms, Inc.* the Ninth Circuit held that the plaintiffs should not have been sanctioned under the removal statute for dismissing their federal claims to ensure remand to the state court. 64 F.3d 487, 491 (9th Cir. 1995). There was no bad faith present in that case, as "there was nothing manipulative about that straight-forward tactical decision." *Id. Baddie* stands for the proposition that a plaintiff is entitled to strategically "choose between federal claims and a state forum" without fear of being sanctioned. *Id.*

AID and its counsel cannot seek refuge under *Baddie*. Unlike the plaintiffs in *Baddie*, AID and its counsel affirmatively told opposing counsel that they had no intention of dismissing the federal claims if the Defendant removed the case. Furthermore, unlike the plaintiffs in *Baddie*, AID and its counsel have an established practice of misleading opposing counsel.

AID and its counsel have filed more than 1,000 lawsuits in the past year asserting identical state and federal claims in state court. (Doc. 22 at 11.) As expected from this high level of activity, this is not the first encounter Defendant's counsel has had with

---

[1] Notably, nothing in the *Martin* case stands for the proposition that a district court must leave the decision to sanction counsel for the state court to consider on remand. Thus, Plaintiff's argument that a situation-specific footnote in *Baddie* appoints state court as the only appropriate forum for this determination is rejected. (Doc. 21 at 8.)

AID, Mr. Strojnik, and Mr. Zazueta. In both this case as well as *Advocates for Individuals with Disabilities Foundation, Incorporated v. Sun West Dental Properties, LLC*, Mr. Anderson sent a letter to AID's counsel inquiring whether they intended to pursue their federal claims. *Compare* (Doc. 10 at 10) *with Advocates for Individuals with Disabilities Foundation, Incorporated v. Sun West Dental Properties, LLC*, 16-cv-02416-JJT, Doc. 8 at 10. If not, Mr. Anderson inquired as to whether AID would be interested in stipulating to the dismissal of the federal claims to save both parties the costs of removal. *Id.* In both instances, AID's counsel assured Mr. Anderson that they had no intention of dismissing their federal claims. (Doc. 10 at 13−16); *Advocates for Individuals with Disabilities Foundation, Incorporated v. Sun West Dental Properties, LLC*, 16-cv-02416-JJT, Doc. 8 at 13−16. And in both instances, AID's counsel promptly moved for dismissal of its federal claims upon notice of removal. AID had costs imposed against it for its behavior in *Sun West Dental Properties* two weeks prior to the hearing for the same behavior in this case. *Advocates for Individuals with Disabilities Foundation, Incorporated v. Sun West Dental Properties, LLC*, 16-cv-02416-JJT, Doc. 26.

AID and its counsel's decisions to dismiss its federal claims under these circumstances are not "straight-forward tactical decision[s]." Rather, these decisions reflect expensive bait-and-switch maneuvers aimed at "prolonging litigation and imposing costs on the opposing party." *Martin*, 546 U.S. at 140. Per Mr. Zazueta's testimony at oral argument, these decisions are ultimately made by Mr. Zazueta and Mr. Strojnik. In this case the Court finds that the refusal to seek dismissal until after counsel had filed their motions for remand evinces a bad faith desire to "argue a meritorious claim for the purpose of harassing an opponent." *Estate of Blas Through Chargualaf*, 792 F.2d at 860. Therefore, the Court finds that counsel's behavior justifies imposing "the excess costs, expenses, and attorneys' fees reasonably incurred" due to counsel's bad faith conduct. 28 U.S.C. § 1927.

Likewise, the Court finds that costs should be imposed against AID pursuant to Section 1447(c). AID is a serial litigant in these cases. It had to know that removal to

federal court would risk the dismissal of its claims unless it found a way to remand this case back to state court. The only certain route to state court involved a motion to dismiss AID's federal claims. Thus, AID knew when defense counsel approached that it would file a motion to dismiss the federal claims immediately after removal to federal court. AID knew, and yet its counsel intentionally told the Defendant that AID would not file such a motion if the case was removed. Defense counsel relied on that statement and incurred expenses to remove this case to federal court. AID's behavior was aimed at "imposing costs on the opposing party," and it is the exact sort of behavior that the *Martin* Court sought to deter. *Martin*, 546 U.S. at 140. Therefore, AID, Mr. Strojnik, and Mr. Zazueta are ordered jointly and severally to reimburse the Defendant for attorney's fees incurred between the removal and remand of this case. The Court will determine the amount of such reasonable fees upon submission by the attorney of an affidavit outlining his expenses for this period.

**CONCLUSION**

The Plaintiff cannot assert that any individual suffered an injury-in-fact, and thus AID lacks the requisite standing to pursue this claim in federal court. Because there is a chance that these claims will be heard in state court, remand is the appropriate remedy. Furthermore, AID, Mr. Strojnik, and Mr. Zazueta will reimburse the Defendant's fees due to their bad faith behavior.

**IT IS THEREFORE ORDERED** directing the Clerk of Court to remand this action back to Maricopa County Superior Court.

**IT IS FURTHER ORDERED** that AID, Mr. Strojnik, and Mr. Zazueta shall reimburse the Defendant for attorney's fees acquired between the removal and remand of this case.

Dated this 13th day of October, 2016.

Honorable G. Murray Snow
United States District Judge